Barry and Maria REID, on their own behalf and as next of friends of Stephen Reid, Plaintiffs,

v.

BOARD OF EDUCATION, LINCOLN-SHIRE–PRAIRIE VIEW SCHOOL DISTRICT 103; Lake County, Illinois State Board of Education and William Charis, Defendants.

No. 90 C 3965.

United States District Court,
N.D. Illinois, E.D.

June 14, 1991.

Marilyn F. Longwell, Chicago, Ill., for plaintiffs.

Michael R. Grimm, Kevin P. Mohr, Clausen Miller Gorman Caffrey & Witous, P.C., Mary Ellen Coghlan, Office of Illinois Atty. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Stephen Reid is a child in need of special educational services. His parents, believing that his school district[1] was not adequately providing for Stephen, obtained services they considered appropriate at their own expense, and then initiated administrative proceedings in order to force the school district to pay for them. Although they were successful in the administrative action, their problems were not yet over—claiming that the school board will not abide by the administrative decision, they filed a civil action to force it to do so, as well as to collect their attorneys' fees. Although the Reids filed their complaint in state court, the defendants removed it to this court because the claim arises under federal law, specifically the Education of the Handicapped Act, 20 U.S.C. § 1400(a) et seq. (EHA). The defendants have moved to dismiss the Reids' complaint, arguing that they have no remedy at law. For the reasons discussed below, this court grants in part and denies in part defendants' motions.

### Background

The district had classified Stephen Reid as a child in need of special educational services since the time he arrived there in 1984. By January, 1989, the team responsible for evaluating Stephen recommended that he be placed in a residential school. Unfortunately, at that time there were no openings available in the school chosen by the team. The district therefore placed Stephen in a public school as an interim measure until a spot became available in the residential school. In February Stephen's parents, believing that his condition was fast deteriorating, removed him from the public school and placed him in a hospital. He remained there until March, when he was finally admitted to the residential school.

Stephen's parents, dissatisfied with the district's psychological evaluation and placement of their son, requested an administrative hearing in which the district's plan, including the decision to place Stephen in public school, could be evaluated. They received a "Level I" hearing, in accordance with the Illinois School Code, 122 Ill.Rev.Stat. par. 14–8.02(h), and the hearing officer decided in their favor. The Special Education District of Lake County (SEDOL) and the district appealed the decision, which was affirmed after a "Level II" hearing. None of the parties appealed that decision, it is therefore final and binding.

The Level II officer ordered the Reids to submit itemized bills for the expenses they had incurred for hospitalizing Stephen. The Reids submitted a partially itemized bill, but the bill did not itemize the costs of the case study they had obtained. The district therefore solicited two independent estimates for each component of the case study and awarded the higher of the two to the Reids. That amount, however, was still "far less" than the amount the Reids actually paid for the case study.

After the school district paid the Reids, it sent a letter to William Charis, a supervisor in the Special Education Department of the Administrative Offices of the Illinois State Board of Education in charge of monitoring compliance with the Level II order, as proof of compliance with the order. Mr. Charis then sent a letter to the Reids and the district stating that the district was in compliance with the Level II order.

### Discussion

#### 1. Education of the Handicapped Act.

Congress passed the Education of the Handicapped Act (EHA or the Act) 84 Stat. 175, as amended, 20 U.S.C. § 1400 et seq., in order to:

assure that all handicapped children have available to them ... a free appropriate public education which emphasizes special education and related services designed to meet their unique needs, and to

---

1. The court will refer to the defendant Lincolnshire–Prairie View School District 103 as "the school district" or "the district".

assure that the rights of handicapped children and their parents or guardians are protected.

20 U.S.C. § 1400(c).

In passing the law in 1975, Congress cited evidence indicating that there were more than eight million handicapped children in the United States, *Id.* at 1400(b)(1), that the special educational needs of such children were not being fully met; *Id.* at 1400(b)(2) and that more than half of the handicapped children in the United States did not receive appropriate educational services which would enable them to have full equality of opportunity. *Id.* at 1400(b)(3). Congress additionally found that "state and local educational agencies have a responsibility to provide education for all handicapped children, but present financial resources are inadequate to meet the special needs of handicapped children and it is in the nation's interest that the federal government assist state and local efforts to provide programs to meet educational needs of handicapped children in order to assure equal protection of the law." *Id.* at 1400(b)(8) and (9).

The EHA not only provides funding for state special educational programs, it also "confers upon disabled students an enforceable substantive right to public education in participating states." *Honig v. Doe,* 484 U.S. 305, 310, 108 S.Ct. 592, 597, 98 L.Ed.2d 686 (1988). Congress therefore conditioned federal assistance upon the states' compliance with the substantive and procedural goals of the EHA. Thus, states seeking to qualify for federal funds must develop policies assuring all disabled children the "right to a free and appropriate education" and must file with the Secretary of Education formal plans mapping out details of the program and procedures. *Id.* Finally, the Act requires that participating states provide handicapped children and their parents guaranteed procedural safeguards with respect to the provision of "free appropriate public education" by that state. 20 U.S.C. § 1415(a). The procedural safeguards are to provide meaningful parental participation in all aspects of the child's placement, including an opportunity for a due process hearing with respect to

any complaints parents have concerning their child's placement and the right to seek administrative review of any decisions they think inappropriate. *Honig,* 484 U.S. at 311–12, 108 S.Ct. at 597–98. After exhausting their administrative remedies, any party aggrieved by the result may bring a civil action in state or federal court. See § 1415(e)(2).

In 1986 Congress amended the EHA with the Handicapped Children Protection Act (HCPA), which permitted the court, in its discretion, to award reasonable attorney's fees as part of the costs to the parents of handicapped children who prevail in the civil action. § 1415(e)(4)(B).

*2.   Availability of Attorneys' Fees for Administrative Proceedings.*

■ The defendants argue that because § 1415(e)(4)(B) refers to parties who prevail in the civil action, it limits the award of attorney's fees to those incurred in such actions (thus prohibiting an award of fees incurred in the preceding administrative actions). The provision's legislative history, however, as well as the decisions of every circuit court to consider the question, are contrary to that position. In fact, the single circuit court case which held that attorneys' fees were *not* available for administrative proceedings, *Moore v. District of Columbia,* 886 F.2d 335 (D.C.Cir.1989) has been vacated. See *Moore v. District of Columbia,* 907 F.2d 165 (D.C.Cir.1990) (rehearing en banc vacating earlier decision and awarding attorney's fees to parent who prevailed in administrative proceeding).

Section 1415(e)(4)(B) provides:

In any action or proceeding brought under this subsection [permitting a civil action after exhaustion of administrative remedies], the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a child or youth with a disability who is the prevailing party.

The court construes the language of the statute by considering "the particular statutory language at issue, as well as the language and design of the statute as a

whole." *K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988).

With that command in mind, the court is compelled to give effect to Congress' use of the words "action or proceeding". The words are phrased in the disjunctive, thus Congress must have intended to use them to refer to two separate matters. They are used in the context of a statute which creates a scheme including both administrative and judicial proceedings. In this context, the most reasonable interpretation of Congress' use of the phrase "action or proceeding" is that it meant to authorize fees for those parties who prevail in either *civil actions* or *administrative proceedings.*

The legislative history of the HCPA, in addition to the plain meaning of the statute, supports the inference that Congress intended to permit successful parties to recover the attorneys' fees incurred during administrative as well as civil proceedings. The House Report accompanying the bill specifically stated that the amendment to the EHA would be in concert with the Supreme Court's holding in *New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980), in which the Court interpreted the words "action or proceeding" in Title VII, in a provision nearly identical to the one at issue here, to include mandatory administrative proceedings.[2] H.R.Rep. No. 296, 99th Cong., 2d Sess. 5 (1985).

In holding that § 1415(e)(4)(B) authorizes the award of fees incurred in administrative proceedings, the court joins the decisions of each of the courts of appeals which have considered the question. See *Moore,* supra, 907 F.2d 165; *McSomebodies v. Burlingame Elementary School Dist.,* 897 F.2d 974 (9th Cir.1989); *Mitten v. Muscogee County School Dist.,* 877 F.2d 932 (11th Cir.1989); *Duane M. v. Orleans Parish School Board,* 861 F.2d 115 (5th Cir. 1988); *Eggers v. Bullit County School District,* 854 F.2d 892 (6th Cir.1988).

**2.** The EHA, like Title VII, *requires* parties to exhaust their administrative remedies before

### Independent Action to Recover Attorneys' Fees

The defendants' final argument against the availability of attorneys' fees is that the statute does not authorize an independent action brought solely to collect attorneys' fees (recall that the Reids won at both the Level I and Level II hearings and thus are not appealing those decisions). The argument ignores, first of all, that the Reids are seeking to enforce the Level II decision, with which they claim defendants have not yet complied. Furthermore, even were the Reids to bring a case solely to collect their fees, the defendants' citation to *North Carolina Dept. of Transportation v. Crest Street Community Council,* 479 U.S. 6, 107 S.Ct. 336, 93 L.Ed.2d 188 (1986) would not support their argument.

In *Crest Street,* the Supreme Court construed the phrase "any action or proceeding *to enforce"* in the Civil Rights Attorneys' Fees Act, 42 U.S.C. § 1988 (emphasis added) to disallow independent actions for fees. Here, of course, Congress authorized the award of fees for "any action or proceeding *brought under this subsection"* (emphasis added). As the court has discussed extensively above, that language, unlike that used in § 1988, includes administrative as well as civil proceedings. See also *Eggers,* 854 F.2d 892. The Supreme Court's analysis in *Crest Street,* is simply not applicable here.

### Conflict Between the EHA and Illinois Law

The defendants next argue that even if the Reids are entitled to bring a civil action to collect their attorneys' fees, the award is not authorized here, because the Illinois School Code permits the court to award fees only where the district has "willfully" violated the applicable statutes or regulations. Specifically, the statute provides:

In any instance where a school district willfully disregards applicable regulations or statutes regarding a child cover-

initiating an action in federal court.

ed by this article, and that disregard has been detrimental to the child, the school district shall be liable for any reasonable attorney fees incurred by the parent or guardian in connection with proceedings under this section.

Ill.Rev.Stat. ch. 122, par. 14–8.02(j). Since the Level II hearing officer specifically found that "there is no evidence of bad faith by the district or Sedol [sic] as to their evaluation and placement of Stephen....", the defendants maintain that Illinois law prohibits the award of attorneys fees.

Defendants' argument fails at the outset, however, because Illinois law *requires* the award of attorneys' fees in a particular situation, i.e. when the district's harmful conduct is willful. It does not *prohibit* it in all other situations. That is, it does not divest the district court of its discretion to award fees, except in those instances in which the school district's conduct has been willful. The statutes are not in conflict, the court has "discretion" to award attorneys' fees in cases in which there is no evidence that the district "willfully" harmed Stephen.

### Independent Action to Enforce Administrative Order

■ The defendants' last argument is more persuasive. They claim that there is no authority for the Reids to bring an independent action pursuant to the EHA in order to enforce the Level II administrative order. That does not mean, however, that such orders are simply unenforceable, so that school districts may comply or not at their pleasure.

The Reids claim that because the district did not reimburse them for the entire amount they requested, pursuant to the Level II order, the district has failed to comply with that order. They are not disputing the merits of the order itself, rather, they seek to enforce it. In other words, the Reids claim that the district is depriving them of rights secured to them under the laws of the United States. That is a question more appropriately addressed in a § 1983 action. See 42 U.S.C. § 1983; see also *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980) (§ 1983 provides remedy for claims based purely upon federal statutory rights); *Robinson v. Pinderhughes*, 810 F.2d 1270, 1273–74 (4th Cir.1987) (holding, on similar facts, that § 1983 is proper method with which to enforce favorable administrative decision).

The court accordingly grants the defendants' motion to dismiss the Reid's petition for enforcement of the Level II order, but will permit the Reids to amend their complaint in order to state a claim pursuant to § 1983.

### William Charis and the Illinois State Board of Education

■ These two defendants have moved to dismiss the claims against them. William Charis is the supervisor in the Special Education Department of the Administrative Offices of the Illinois State Board of Education in charge of monitoring compliance with the Level II order. He sent a letter to the Reids and to the district stating that the district was in compliance with the Level II order. Mr. Charis acted solely in fulfillment of his statutory duty and there is no allegation that he had any direct personal responsibility for the alleged violation of the administrative order. He therefore is not liable to the Reids for the district's alleged failure to comply with the Level II order. See *Hollenbeck v. Board of Education of Rochelle Tp.*, 699 F.Supp. 658, 664 (N.D.Ill.1988) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

■ The Illinois State Board of Education (ISBOE) also seeks dismissal from this action on different, but no less successful, grounds than Mr. Charis. The ISBOE argues that, because it was not a party to the administrative proceedings, it cannot be held liable for the attorneys' fees incurred in those proceedings. The ISBOE is correct. The only parties to the hearings were the district and SEDOL. The ISBOE provided the Level II hearing in compliance with the Illinois School Code, Ill.Rev.Stat. ch. 122, par. 14–8.02(h). It is the district, not the ISBOE, which was required to re-

imburse the Reids. The Reids have not stated a cause of action against the ISBOE.

## Conclusion

The court denies defendants' motion to dismiss plaintiffs' claim for attorneys' fees. The court grants the motion of defendants William Charis and the Illinois State Board of Education and dismisses them from the case. The court grants the remaining defendants' motion to dismiss plaintiffs' petition for enforcement of the administrative order. Plaintiffs may amend their complaint to state a claim pursuant to 42 U.S.C. § 1983.