RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0346P (6th Cir.)
File Name: 00a0346p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

JOSEPH JAMES, a minor by
and through his parents,
Nancy James and Cameron
James; NANCY JAMES;
CAMERON JAMES,
      *Plaintiffs-Appellants,*

      *v.*

UPPER ARLINGTON CITY
SCHOOL DISTRICT, et al.,
      *Defendants-Appellees.*

No. 98-3048

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 97-00172—Edmund A. Sargus, Jr., District Judge.

Argued: April 27, 2000

Decided and Filed: September 28, 2000

Before: GUY, BOGGS, and SUHRHEINRICH, Circuit
Judges.

———————————

**COUNSEL**

**ARGUED:**  Peter W.D. Wright, Deltaville, Virginia, for Appellants.  John C. Albert, CRABBE, BROWN, JONES, POTTS & SCHMIDT, Columbus, Ohio, for Appellees. **ON BRIEF:**  Peter W.D. Wright, Deltaville, Virginia, William M. Mattes, DINSMORE & SHOHL, Columbus, Ohio, for Appellants.  John C. Albert, CRABBE, BROWN, JONES, POTTS & SCHMIDT, Columbus, Ohio, Julie Carleton Martin, SCOTT, SCRIVEN & WAHOFF, Columbus, Ohio, for Appellees.

   BOGGS, J., delivered the opinion of the court, in which SUHRHEINRICH, J., joined. GUY, J. (pp. 10-13), delivered a separate opinion concurring in part and dissenting in part.

———————————

**OPINION**

———————————

   BOGGS, Circuit Judge.   Nancy and Cameron James removed their son Joseph from the Upper Arlington school system in November 1989, because he was in the fourth grade and still could not read due to severe dyslexia, which the parents felt that the school was not doing enough to help him overcome.  At a meeting the previous month to discuss Joseph's individualized educational program (IEP), the school district had told the parents that Joe would never learn to read and would "have to learn there are other ways to get information besides reading."  Over the next six years, Joseph was placed in three different private schools, where he did learn to read.  The Jameses did not ask the school district to pay for the tuition.  They did, however, continue to have some interaction with the district.

   In the spring of 1990, the Jameses asked for a new IEP for Joseph, but were told that the school district would not

prepare one until Joseph re-enrolled in the public school system. They declined to pursue that option. According to the complaint, "after Joe completed the [school] year at Kildonan," the Jameses again approached the school district about returning Joseph to the public schools, but the Director of Special Education told the parents, "Don't bring him back now, give me a couple of years to get someone trained." The Jameses did not challenge that advice, or the district's continuing refusal to write an IEP for Joseph until he re-enrolled. Finally, on May 13, 1996, the Jameses made a written request for a due process hearing under the Individuals with Disabilities Education Act (IDEA), seeking retroactive and prospective tuition from Upper Arlington for Joseph's private school education.

The Administrative Officer never reached the merits of whether Joseph had an appropriate individual education plan, nor was there an evidentiary hearing, because the AO accepted the school district's argument that the Jameses had not followed proper procedures, and therefore granted the district's motion to dismiss. A state level review officer affirmed the AO's decision, based on the grounds that the parents had unilaterally withdrawn their son without first pursuing the appropriate administrative remedies.

The district court granted judgment on the pleadings to the school district in a December 15, 1997 order, holding that the statute of limitations had begun to run in November 1989 when Joseph was removed from the school district and had expired no more than four years later, long before the current action began. The district court noted that the Jameses had known of their right to initiate a due process hearing in 1989, but had failed to do so until 1996. Because they failed to pursue administrative relief before removing their son from public school, and because the statute of limitations has run, the district court concluded that the Jameses are no longer entitled to an education at public expense. We disagree with the district court that the Jameses did not give the school district an adequate opportunity to correct Joseph's

educational program. Although we affirm the judgment of the district court with regard to Joseph's 1989 removal and the 1990 rebuffed request for an IEP on statute of limitations grounds, we remand the case for further proceedings on the separate subsequent cause of action that arose in 1994 and may have been timely pursued in 1996.

## I

The Supreme Court has held that parents who violate the "stay-put provision" of IDEA (20 U.S.C. § 1415(e)(3), now 20 U.S.C. § 1415(j)) during the pendency of administrative review procedures do not forfeit the right to tuition reimbursement. *See School Comm. of Burlington, Mass. v. Department of Educ. of Mass.*, 471 U.S. 359 (1985). However, if their removal decision is not upheld, they do not get reimbursed. *See Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 15 (1993) ("[P]arents who . . . unilaterally change their child's placement during the pendency of review proceedings . . . do so at their own financial risk"). The Sixth Circuit has read this precedent to mean that parents who ignore the administrative process entirely "generally render their children ineligible for free special education." *Wise v. Ohio Dept. of Educ.*, 80 F.3d 177, 183 (6th Cir. 1996). The *Wise* plaintiffs never made a formal request for a hearing, so the facts are slightly different than here where a request was made eventually, although extremely late in the game.

The law is well established that parents who unilaterally withdraw a student, request a due process hearing, and pursue administrative relief, may recover tuition retroactively if their administrative action is successful. Less clear is whether parents who do not request a hearing until years later receive similar treatment. The Jameses' claim thus raises two questions. First, may their 1994 interaction with the school district be construed to raise a new cause of action? Second, if not, then does the statute of limitations bar consideration of the merits of the Jameses' claim?

Even if a refusal to prepare a pre-enrollment IEP could constitute a violation of the IDEA, plaintiffs' 1994 contact falls short. I would find that no new cause of action accrued in 1994 and, accordingly, that all of plaintiffs' IDEA claims were barred by the statute of limitations.

acknowledged that there is no clear law on the issue, the opinion nonetheless expressly holds, without analysis, that "refusing to do an IEP pre-enrollment constitutes [] a violation [of the IDEA]." (Para. 14).[3] Without resolving this question, particularly given the dearth of authority provided on the issue, I would conclude that the plaintiffs' 1994 contact with the district did not constitute a new cause of action as it did not involve the *refusal* to prepare a pre-enrollment IEP.

Factually, plaintiffs' claims concerning the 1990 and 1994 contacts with the school must be distinguished. In March 1990, the district agreed to re-evaluate plaintiffs' son and to meet with them to discuss the results. The district, however, would not review or prepare an IEP unless he was re-enrolled in the district. When plaintiffs expressed an intention to re-enroll him, the district agreed to participate in an IEP meeting with the private school. The district nonetheless continued to refuse to review the IEP and recommend changes until he was re-enrolled. Plaintiffs kept their son in the private school. Without deciding whether a new cause of action was triggered by these events, I would find that such a claim would have accrued in 1990 and would be outside either statute of limitations period.

With respect to the 1994 contact, however, plaintiffs allege that they met with the district's director of special education after the end of the school year to discuss their child's possible return to the district. They were told not to bring him back then, but to give her "a couple of years to get someone trained." Certainly, plaintiffs were rebuffed and discouraged from returning their son to the district. At the same time, however, plaintiffs did not request an evaluation, seek a private placement, or again request that an IEP be prepared.

---

[3] The only case cited in support of this holding did not involve this issue, but noted in its recitation of the facts that the school district realized it had an obligation to prepare an IEP before the child re-enrolled. *See Cleveland Heights-Univ. Heights Sch. Dist. v. Boss,* 144 F.3d 391, 394 (6th Cir. 1998).

## II

The Jameses acknowledge that they did not request a due process hearing until 1996. However, they claim that the school district did not advise them that they could request such a hearing or that they might have a right to tuition reimbursement. Moreover, they note that the IDEA requires school districts to give parents such notice in writing when the school district refuses to make a requested change in a child's special education program. The district concedes such an obligation under the statute, but insists that the Jameses acted unilaterally, and that the school district thus never had an opportunity to refuse to make a requested change. In addition, the record contains evidence suggesting that the Jameses had actual notice of their hearing rights. On April 14, 1987, Mrs. James signed a form stating that "My rights have been discussed with me and I have received . . . information for parents regarding special education." This information included a brochure informing parents that "you . . . have the right to request an impartial due process hearing at any time to resolve disagreements related to . . . the provision of a free appropriate public education to your child." Despite knowledge of their hearing rights, the Jameses did not seek a hearing to resolve the problem with the school district's education program for their son until 1996.

The Jameses' 1994 interaction with the school district suggests that a new cause of action arose prior to their 1996 request for a due process hearing. Taking all the well-pleaded facts as true, as we must on a motion to dismiss, the Jameses made contact with the school system about returning their son in 1994 and having a new IEP done, but were essentially rebuffed. Although Joseph was never enrolled, and the school district never refused to enroll him or to do a *post*-enrollment IEP, the district did discourage the Jameses from re-enrolling Joseph. Furthermore, the district told the Jameses that their child would have to be re-enrolled before the school district would be obligated to do a new IEP for him.

There is no clear law that this is correct. The obligation to deal with a child in need of services, and to prepare an IEP, derives from residence in the district, not from enrollment. The district can perhaps be excused for taking no action during 1989-94, when apparently the child was being educated to his parents' satisfaction without input from the school district. Since the Jameses were aware, at least constructively, of the availability of a due process hearing, the school's failure to update their notice during that interval did not create a new cause of action. The IDEA establishes the appropriate course of action for parents who are dissatisfied with a public school's intended educational program for their child. By not following those procedures, parents cannot create a new cause of action not envisioned by the Act itself. In short, the Jameses had an obligation to request a due process hearing, and they failed to meet that obligation in a timely fashion. *See Ash v. Lake Oswego Sch. Dist. No. 7J*, 766 F. Supp. 852, 864 (D. Or. 1991).

The excusable state of affairs apparently came to an end in 1994 when the parents specifically approached the school district about re-enrollment and obtaining a new IEP, even though the Jameses did not request a due process hearing at that point in time. If the Jameses' rights were in any way violated at that point, a cause of action arose at that time separate from any that arose in 1989. We hold that refusing to do an IEP pre-enrollment constitutes such a violation. *See Cleveland Heights-Univ. Heights City Sch. Dist. v. Boss*, 144 F.3d 391, 393 (6th Cir. 1998) (noting in passing that federal law required development of an IEP for a child still enrolled in a private school). To hold otherwise would allow the school to slough off any response to its duty until the parents either performed the futile act of enrolling their son for one day and then withdrawing him as soon as the IEP was complete, or, worse, leaving the child in an arguably inadequate program for a year just to re-establish his legal rights. Neither action seems to be compelled by the statutory scheme or the case law. Nor does the failure to request a due process hearing in 1994 vitiate the cause of action that

to claims for reimbursement unless a new cause of action arises. I would clarify that unilateral withdrawal is separate from the statute of limitations issue. While this distinction is immaterial here because a due process hearing was not requested within the statute of limitations, this court has not yet decided if, or when, a unilateral withdrawal bars a claim for reimbursement after a request for review has been made.[2] Notably, the Court in *Burlington* rejected the contention that a parental violation of the stay-put provision constitutes a waiver of reimbursement. *See* 471 U.S. at 372.

The appropriate statute of limitations for claims under the IDEA must be determined on a case-by-case basis. *See Janzen v. Knox County Bd. of Educ.*, 790 F.2d 484, 486-87 (6th Cir. 1986). Claims under the IDEA generally accrue when the parents know, or have reason to know, of the injury or event that was the basis of their claim. *See Hall v. Knott County Bd. of Educ.*, 941 F.2d 402 (6th Cir. 1991). I agree that plaintiffs' IDEA claims accrued in 1989 when they unilaterally withdrew their child from the school district. At that time, plaintiffs knew the school was not providing the services they felt their son needed and alleged that he was suffering terribly as a result. As such, plaintiffs' claims were barred under either the two-year limitations period for personal injury actions, or the four-year limitations period for actions seeking recovery of personal property. *See* OHIO REV. CODE §§ 2305.09-.10.

I dissent from the majority's finding that a new cause of action arose in 1994, which was within either limitations period, when the plaintiffs' inquiries about returning to the district were rebuffed for a second time. Despite having

---

[2]In fact, the Third Circuit has held that "when parents unilaterally withdraw their children from public school, absent mitigating circumstances, they are not entitled to reimbursement for private school tuition until they request review proceedings." *Warren G. v. Cumberland County Sch. Dist.*, 190 F.3d 80, 84 (3d Cir. 1999) (citing *Bernardsville Bd. of Educ. v. J.H.*, 42 F.3d 149, 156-58 & n.14 (3d Cir. 1994)).

---

## CONCURRING IN PART, DISSENTING IN PART

---

RALPH B. GUY, JR., Circuit Judge, concurring in part and dissenting in part. I concur in the court's judgment to the extent that it affirms the dismissal of the plaintiffs' claims, but dissent from the conclusion that the plaintiffs' contact with the school district in 1994 gave rise to a new cause of action under the IDEA. I would affirm the judgment of the district court and briefly write to explain my view of the matter.

The remedies available under 20 U.S.C. § 1415(e)(2)[1] may include reimbursement to parents for private school tuition and expenses. *See School Comm. v. Department of Educ.,* 471 U.S. 359, 371 (1985). Disputes about who will be financially responsible for private schooling paid for by the parents is a matter subject to the due process procedures. *See id.* (citing 34 C.F.R. § 300.403(b)). We have held that parents who are dissatisfied with the publicly funded education being provided to their child must complain and, if necessary, seek a due process hearing before unilaterally withdrawing their child from a public school. *See Wise v. Ohio Dept. of Educ.,* 80 F.3d 177, 184 (6th Cir. 1996). I agree that the plaintiffs' failure to request a due process hearing until six and a half years after withdrawing their child from the district cannot be excused on the grounds that the district failed to provide them adequate notice of their rights.

Although the opinion does not say so, some readers may interpret it to hold that unilateral withdrawal is a complete bar

---

[1] Although significant amendments to the IDEA were enacted in 1997, the parties agreed that the amended provisions do not apply in this case. *See* Pub. L. No. 105-17, Title II, § 201(a)(2)(C) (June 4, 1997). The statutory sections cited in this case, therefore, are the pre-amendment provisions.

accrued in 1994. Rather, the request for a hearing made in 1996 preserved the earlier claim as well as the claim relating to the 1996-97 school year.

### III

This court has never squarely decided whether the statute of limitations bars consideration of the merits of a claim like the Jameses'. Still, as in *Wise*, the Jameses did not give the school an opportunity to remedy the problem before 1994. Assuming for purposes of argument that the school district's plan for Joseph was inadequate, by unilaterally withdrawing their son and failing to seek administrative relief in a timely fashion, the Jameses prevented the school from correcting that inadequate plan. The IDEA does not require the best possible education at public expense, only an appropriate one. *See Wise*, 80 F.3d at 185. Given the opportunity, the Upper Arlington school district may have been able to provide Joseph an appropriate education, albeit not the best one possible.

The Jameses' initial cause of action arose in November 1989 when they decided that the school district was failing their son. The IDEA, like § 1983, does not specify a statute of limitations. In such cases, federal courts adopt the statute of limitations from state law that most closely corresponds to the action brought. *See Janzen v. Knox County Bd. of Educ.,* 790 F.2d 484 (6th Cir. 1986). The *Janzen* court held that no one state statute of limitations applies, so it must be judged on a case-by-case basis. Here, however, whether applying Ohio's two-year statute of limitations for personal torts or its four-year statute of limitations for actions to recover personal property, the statutory limit has run for a suit to recover tuition starting in 1989. Their initial claim accrued when they knew of the injury to their child [i.e., the inadequate education]. *See Hall v. Knox County Bd. of Educ.,* 941 F.2d 402, 408 (6th Cir. 1991). However, the Jameses' 1996 request for a due process hearing was clearly less than four years, and

may have been less than two years, after the cause of action that accrued in 1994 and thus may be heard.

By unilaterally withdrawing their student from public school and requesting a due process hearing, parents assume a double risk. First, they assume the risk that their child's IEP will be found adequate, thus precluding their reimbursement. Second, they assume the risk that though their child's IEP was inadequate, the alternative placement they chose for their child will not be deemed an adequate education either, thus precluding their reimbursement. As noted above, the Supreme Court has determined that parents are entitled to assume such a risk and proceed in such a manner. Parents are not entitled, however, to delay a request for a due process hearing, incur tuition costs of their own choosing for several years (thus depriving the school district of a chance to fashion a less expensive acceptable alternative), and then ask the school district to fund whatever alternative they have pursued in the interim.

The Jameses argue that *Doe v. Metropolitan Nashville Pub. Sch.* changes the outcome of this case. *See Doe*, 133 F.3d 384 (6th Cir. 1998). However *Doe* is readily distinguishable from the case at bar. The school district in *Doe* had failed to comply with the IDEA's so-called child-find requirements. The parents had also made the private placement without having had prior contact with the school system. Perhaps most significantly, the *Doe* court concluded that genuine issues of material fact existed in that case, and that the district court had improperly weighed evidence at the summary judgment stage. No genuine issues of material fact exist in the case under review, and thus the district court did not improperly weigh anything relating to the 1989 cause of action that must be remanded for trial.

## IV

The Jameses' Rehabilitation Act and § 1983 claims based on the 1989 cause of action are likewise barred by their respective two-year statutes of limitations. *See Sutherland v. Hardaway Mgmt., Inc.*, 41 F.3d 250, 254 (6th Cir. 1994) (rehabilitation act); *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985) (Section 1983). In addition, the Jameses' claims against school officials are not proper under the IDEA absent a claim that they failed to act in fulfillment of their statutory duties. *See Reid v. Board of Educ. Lincolnshire-Prairie View*, 765 F. Supp. 965, 969 (N.D. Ill. 1991) (citations omitted). Finally, there does not appear to be any good reason to toll the statute of limitations in this case. The Jameses were aware of their rights and sat on them, which does not justify tolling.

## V

The Jameses had an obligation under the IDEA to challenge the Upper Arlington school district's IEP through administrative channels. Even after unilaterally withdrawing their son, they could have requested a due process hearing on the adequacy of the IEP. Instead, they waited for almost seven years to seek reimbursement for private tuition costs they had incurred. Still, they did approach the school district in 1994 and were denied an IEP. That latter circumstance gives them a cause of action, even though their earlier action does not. Under the circumstances presented to the court, we hold that the plaintiffs cannot recover their expenses retroactively between 1989-94, but can pursue a claim regarding tuition after the Jameses approached the school district in 1994 and were rebuffed.

For the above reasons we AFFIRM the judgment of the district court in part, REVERSE it in part, and remand the case to the district court for further proceedings consistent with this opinion.