**M.D., Mr. & Mrs. D, Plaintiffs–Appellants,**

v.

**SOUTHINGTON BOARD OF EDUCATION, Defendant–Appellee,**

**Docket No. 00–9412.**

United States Court of Appeals, Second Circuit.

Argued: May 17, 2001.

Case Remanded: Aug. 6, 2001.

Appeal Reinstated: Sept. 11, 2002.

Decided: June 30, 2003.

---

Winona W. Zimberlin, Hartford, CT, for Plaintiffs–Appellants.

Nicole A. Bemabo (Mark J. Sommaruga, on the brief), Sullivan, Schoen, Campane & Connon LLC, Hartford, CT, for Defendant–Appellee.

Before: WALKER, Chief Judge, FEINBERG and CABRANES, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge.

This case is before us a second time, following a remand to the United States District Court for the District of Connecticut (Dominic J. Squatrito, *Judge* ) for supplementation of the record. *See generally United States v. Jacobson,* 15 F.3d 19, 22 (2d Cir.1994) (holding that remands for supplementation of the record are permissible). The question presented is whether the plaintiffs' claims brought pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.,* § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehabilitation Act"), and the Connecticut and United States Constitutions are time-barred under the applicable Connecticut statute of limitations.

## BACKGROUND

Plaintiffs initially brought this action on March 12, 1999, seeking, *inter alia,* reimbursement for the three-and-one-half years of tuition expenses that resulted from Mr. and Mrs. D.'s unilateral decision to remove their daughter M.D. from the Southington public school system and to place her in Cheshire public high school on a tuition basis. We assume familiarity with the facts and procedural history set forth in the published opinion of the District Court. *See Mr. & Mrs. D. v. Southington Bd. of Educ.,* 119 F.Supp.2d 105 (D.Conn.2000) (*M.D.I* ).

On October 20, 2000, the District Court granted defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and (b)(6) because it concluded that plaintiffs' claims were time-barred by the two-year limitations period set forth in Connecticut General Statutes ("C.G.S.") § 10–76h(a)(3). The Court determined that plaintiffs' cause of action accrued when M.D. was unilaterally withdrawn from the Southington School District on January 12, 1994. *See M.D.I,* 119 F.Supp.2d at 112. Plaintiffs did not file a request for a due process hearing pursuant to the IDEA, 20 U.S.C. § 1415(f)(1), until April 19, 1998—more than four years after the unilateral withdrawal of M.D. from Southington and the subsequent enrollment of M.D. at Cheshire public high school. Accordingly, the District Court concluded, their claims fell outside the two-year limitations period. After determining that the doctrine of equitable tolling was inapplicable, the Court granted defendant's motion to dismiss on the ground that plaintiffs' claims were time-barred. *See id.* at 115. Plaintiffs timely appealed.

On August 6, 2001, we filed an unpublished order remanding the cause to the District Court so that the parties could supplement the record. *See M.D. v. Southington Bd. of Educ.,* 16 Fed.Appx. 70, 72, 2001 WL 881045 (2d Cir. Aug.6, 2001) (*M.D.II* ). Recognizing that § 10–76h requires the Board of Education to provide notice of certain procedural safeguards before the two-year limitations period begins to run—including notice of the limitations period itself—we sought supplementation of the record with admissible

evidence related to the following three questions:

> ■ when, how, and under what circumstances did the D family first receive actual notice that a two-year period of limitation—or any period of limitation—was running against them[;][2] if the D family did not first receive such actual notice from the Board of Education, ... when, how, and under what circumstances did they first receive it ... [; and] [3] did the D family "sleep on their rights" so that the doctrine of laches may have some bearing on this case?

*M.D. II*, 16 Fed.Appx. 70, 71–72. We stated that, on remand, the District Court should consider "whether it is appropriate or permissible for the District Court to convert the Rule 12 motion to a Fed R. Civ. P. 56 motion for summary judgment." *Id.* 16 Fed.Appx. at 72. We indicated that "[i]f the Rule 12 motion is converted into a Rule 56 motion, jurisdiction will be restored to this panel, without the need to file a new notice of appeal." *Id.*

On May 23, 2002, while the case was pending on remand, defendant filed a motion for summary judgment. On August 1, 2002, Magistrate Judge Thomas P. Smith, to whom the case had been referred, filed a report recommending that defendant's summary judgment motion be granted. *See Mr. & Mrs. D. v. Southington Bd. of Educ.*, No. 99 Civ. 453, slip op. at 21 (D.Conn. Aug. 1, 2002) (*M.D.III*). Magistrate Judge Smith correctly recognized that, because the IDEA does not contain its own statute of limitations, courts must "apply the most closely analogous statute of limitations under state law." *Id.* at 11 (internal quotation marks and citation omitted); *see generally Wilson v. Garcia*, 471 U.S. 261, 266–67, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). He determined that the most closely analogous statute of limitation under Connecticut law is C.G.S.

§ 10–76h(a)(3), which sets forth a two-year limitations period for challenges to the appropriateness of an educational placement. Nevertheless, he concluded that, because M.D. was unilaterally withdrawn from the Southington School District prior to the enactment of § 10–76h(a)(3), that statute's two-year limitations period was not applicable. Instead, he recommended applying the three-year limitations period set forth in C.G.S. § 52–577, which governs all causes of action "founded upon a tort."

Magistrate Judge Smith next determined that the date of accrual of a cause of action brought pursuant to the IDEA is governed by federal law, and that such an action accrues "when the parents know or have reason to know of the injury or event that is the basis for their claim." *M.D. III*, No. 99 Civ. 453, at 13 (quoting *James v. Upper Arlington City Sch. Dist.*, 987 F.Supp. 1017, 1023 (S.D.Ohio 1997)). He concluded that "[i]n this case, the parents were aware of the alleged injury to their child when they unilaterally placed her out of what they judged to be an inferior school district." *Id.* at 16. Because M.D. was withdrawn from the Southington schools on January 12, 1994—more than four years before Mr. and Mrs. D. requested a due process hearing on this matter—Magistrate Judge Smith concluded that, even under the longer, three-year limitations period provided by § 52–577, the plaintiffs' claims are time-barred.

The District Court adopted Magistrate Judge Smith's recommendation, and judgment was entered in favor of the defendants on September 11, 2002. Pursuant to this Court's summary order of August 6, 2001, jurisdiction was automatically reinstated in this Court.

## DISCUSSION

### A. *Standard of Review*

We review a grant of summary judgment *de novo*, construing all facts in the

light most favorable to the non-moving party and identifying any genuine issues of material fact that remain for adjudication. *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Schonholz v. Long Island Jewish Med. Ctr.,* 87 F.3d 72, 77 (2d Cir.1996).

## B. *Accrual of the Cause of Action*

 Even where a federal court borrows a state statute of limitations, "[f]ederal law governs the question of when a federal claim accrues." *Leon v. Murphy,* 988 F.2d 303, 309 (2d Cir.1993) (internal quotation marks omitted). Under federal law, a cause of action generally accrues "when the plaintiff knows or has reason to know of the injury that is the basis of the action." *Id.* (internal quotation marks omitted); *see also Singleton v. City of New York,* 632 F.2d 185, 191 (2d Cir.1980) (applying this rule of accrual to claims brought pursuant to 42 U.S.C. § 1983).

 We join our sister circuits in holding that this general rule is also applicable to claims brought pursuant to the IDEA. *See, e.g., James v. Upper Arlington City Sch. Dist.,* 228 F.3d 764, 769 (6th Cir.2000) (holding that "initial claim accrued when the[ ] [parents] knew of the injury to their child[,] *i.e.,* the inadequate education"); *Alexopulos v. Riles,* 784 F.2d 1408, 1411 (9th Cir.1986) (holding that "a cause of action generally accrues when a plaintiff

learns of the injury which is the basis of his action" and applying this standard to claims brought pursuant to the IDEA's predecessor statute, the Education of All Handicapped Children Act, 20 U.S.C. §§ 1401 *et seq.* (1982)).

Applying this rule, it is clear that plaintiffs "knew or had reason to know" of their injury when they withdrew M.D. from the Southington school system on January 12, 1994 because they believed that the system was not providing her with an appropriate and adequate education. At the time they placed M.D. in Cheshire's public high school on a tuition basis, Mr. and Mrs. D. were aware that they would have a substantial monetary loss as a result of their decision. We therefore hold that plaintiffs' claims accrued on or before January 12, 1994.[1]

## C. *Statute of Limitations Governing the IDEA Claims*

 "When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." *Wilson v. Garcia,* 471 U.S. 261, 266–67, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Where a federal statute is silent with respect to the applicable limitations period, courts apply the "most appropriate or analogous state statute of

---

1. Plaintiffs cite our opinion in *Ghartey v. St. John's Queens Hosp.,* 869 F.2d 160, 163 (2d Cir.1989), for the proposition that "a cause of action accrues when 'the plaintiff could first have successfully maintained a suit based on that cause of action.'" *Id.* (quoting *King v. New York Tel. Co.,* 785 F.2d 31, 33 (2d Cir. 1986)). They ask us to apply this definition of accrual rather than the one we have adopted.

Plaintiffs are correct that, on occasion, we have indicated that a cause of action generally accrues when "the plaintiff could first have successfully maintained a suit based on that

cause of action." *Santos v. Dist. Council,* 619 F.2d 963, 968–69 (2d Cir.1980); *see also Ghartey,* 869 F.2d at 163; *King,* 785 F.2d at 33. But we have consistently interpreted this alternative test to mean the same thing as the general rule that we adopt here. *See Flanigan v. (Int'l Bbd. of Teamsters) Truck Drivers Local No. 671,* 942 F.2d 824, 827 (2d Cir. 1991); *Ghartey,* 869 F.2d at 163, 165; *King,* 785 F.2d at 33, 34; *Santos,* 619 F.2d at 968–969. Accordingly, plaintiffs' argument is unavailing.

limitations." *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987); *see also Wilson*, 471 U.S. at 266–68, 105 S.Ct. 1938; *Board of Regents v. Tomanio*, 446 U.S. 478, 488, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980); *Adler v. Educ. Dep't of N.Y.*, 760 F.2d 454, 455–60 (2d Cir.1985) (borrowing limitations period from an analogous New York statute for purposes of determining the timeliness of an action brought pursuant to the IDEA's predecessor, the Education of All Handicapped Children Act, 20 U.S.C. §§ 1401 *et seq.* (1982)).

In its October 20, 2000 ruling granting defendant's motion to dismiss, the District Court adopted the Connecticut statute of limitations set forth in § 10–76h(a)(3).[2] This provision establishes a two-year limitations period for challenges to an educational placement. It states that the limitations period generally begins at the time the school board declines to make the educational change desired by the parents or at the time it proposes an educational change that the parents deem unsuitable. The statute provides, however, that the limitations period will not begin until the school board has provided notice to the aggrieved party of certain procedural safeguards, including notice of the limitations period itself. This provision is part of a series of Connecticut statutes enacted in order to ensure compliance with the terms of the IDEA. *See* C.G.S. §§ 10–76a *et seq.* It became effective on July 1, 1995. *See* 1995 Conn. Acts 95–237 § 3 (Reg.Sess.).

On remand, the District Court adopted the recommendation of Magistrate Judge

Smith that the two-year limitations period set forth in § 10–76h(a)(3) is inapplicable because that statute did not become effective until after January 12, 1994—the date Magistrate Judge Smith determined the instant cause of action accrued. Instead, the District Court applied § 52–577, which creates a three-year limitations period for the general category of "action[s] founded upon a tort."

■ Even though the Connecticut legislature enacted § 10–76h(a)(3) after the plaintiffs' cause of action accrued, we agree with the District Court's *original* conclusion that its two-year limitations period for a lawsuit challenging an educational placement is the appropriate statute of limitations to apply in this case. As an initial matter, § 10–76h(a)(3) is clearly the most closely analogous statute to the IDEA because it governs claims relating to educational placement and "the provision of a free appropriate public education."

Moreover, we conclude that the two-year limitations period set forth in § 10–76h(a)(3) may be applied in this case even though the cause of action accrued prior to its enactment. In *Morse v. Univ. of Vermont*, 973 F.2d 122 (2d Cir.1992), we stated that a borrowed state statute of limitations is applicable to causes of action accruing before its effective date unless the statute of limitations decision overruled clear precedent on which the plaintiff was entitled to rely, the new limitations period has been occasioned by a change in the substantive law the

---

2. Conn. Gen.Stat. § 10–76h(a)(3) states:

A party shall have two years to request a hearing from the time the board of education proposed or refused to initiate or change the identification, evaluation or educational placement or the provision of a free appropriate public education placement to such child or pupil provided, if

such parent, guardian, pupil or surrogate parent is not given notice of the procedural safeguards, in accordance with regulations adopted by the State Board of Education, including notice of the limitations contained in this section, such two-year limitation shall be calculated from the time notice of the safeguards is properly given.

purpose of which would not be served by retroactivity, and retroactive application would be inequitable.

*Id.* at 127 (citing *Goodman,* 482 U.S. at 662, 107 S.Ct. 2617). Plaintiffs filed their suit prior to the enactment of § 10–76h(a)(3), and at that time neither we nor the Supreme Court had identified a statute of limitations for IDEA cases brought in Connecticut's federal courts. Therefore, at the time plaintiffs filed their lawsuit, no clear precedent existed upon which plaintiffs could rely. *See id.* at 127. Nor did the enactment of this statute result in any substantive change to the IDEA. Finally, retroactive application of the two-year limitations period set forth in § 10–76h(a)(3) is not inequitable in the circumstances presented: It requires parents to provide school districts with sufficiently prompt notice of their concerns so that the school district has an adequate opportunity to fashion remedial measures to help the child, but it is long enough to provide parents with an opportunity to protect the rights of their children to a free and appropriate public education through litigation.

## D. *Equitable Tolling*

As noted above, in addition to setting forth a two-year limitations period, § 10–76h(a)(3) requires that school boards provide potential plaintiffs with notice of certain procedural safeguards, including notice of the limitations period itself. It then states that the limitations period "shall be calculated from the time notice of the[se] safeguards is properly given [to the plaintiffs]."

In order to determine whether to borrow this notice requirement, we must first decide whether it constitutes an equitable tolling provision or a provision governing accrual. *See Pearl v. City of Long Beach,* 296 F.3d 76, 80–84 (2d Cir.2002) (discussing at length the difference between equi-

table tolling and accrual). This distinction is significant because, although federal courts do not borrow state rules governing the accrual of claims, *see* Part B, *ante,* they do borrow state equitable tolling rules, *see Tomanio,* 446 U.S. at 484–86, 100 S.Ct. 1790. Accordingly, this part of § 10–76h(a)(3) is applicable here only if it is considered to be an equitable tolling provision rather than a provision governing accrual.

At first glance, the relevant language resembles a rule of accrual because it governs when the limitations period *begins.* But, as Black's Law Dictionary properly states, the term "accrue" means "[t]o come into existence as an enforceable claim or right." Black's Law Dictionary 21 (7th ed.1999). There can be no doubt that plaintiffs' claims "[came] into existence" and became fully "enforceable" on January 12, 1994—the date on which they knew or had reason to know of their injury—because they could have filed for a due process hearing at any time after that date. Accordingly, even though § 10–76h(a)(3) prevents the statute of limitations from running until plaintiffs are provided with notice of certain procedural safeguards, it does not alter the date on which plaintiffs' claim accrued.

■ Instead, the language in § 10–76h(a)(3) delaying the onset of the limitations period until plaintiffs have been afforded adequate notice is an equitable tolling provision. We have defined equitable tolling rules as those that allow or require a court "under compelling circumstances, [to] make narrow exceptions to the statute of limitations in order to prevent inequity." *Asbestos Claimants v. U.S. Lines Reorganization Trust (In re U.S. Lines, Inc.),* 318 F.3d 432, 436 (2d Cir.2003) (internal quotation marks omitted). Because the notice requirement at issue minimizes the

inherent inequity between the legal knowledge and experience of the school board and that of the parent, it operates as an equitable toll on the two-year limitations period.

Nevertheless, we decline to borrow the equitable tolling provision of § 10–76h(a)(3) in this case. As noted above, § 10–76h(a)(3) requires that its two-year limitations period be equitably tolled until the parents are notified of certain procedural safeguards, *including the existence of the limitations period itself.* Because § 10–76h(a)(3) was not enacted until 1995, notice of its limitations period could not have been provided to any potential plaintiffs prior to that date. Moreover, even after § 10–76h(a)(3) was enacted, it is highly unlikely that a school district would be able to provide the requisite notice to those potential plaintiffs who are no longer in the school system. Accordingly, if we were to apply this tolling provision to claims that accrued *prior* to the enactment of § 10–76h(a)(3), these claims would never be time-barred.

The Supreme Court has clarified that federal courts must borrow a state's equitable tolling rules *unless* to do so "would defeat the goals of the federal statute at issue." *Hardin v. Straub,* 490 U.S. 536, 539, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989); *see also Pearl,* 296 F.3d at 80. One of the fundamental goals of the statutory scheme codified in the IDEA is to promote the expeditious resolution of educational programming disputes. *See Adler v. Educ. Dep't of State of New York,* 760 F.2d 454, 459–60 (2d Cir.1985). Application of the equitable tolling provision of § 10–76h(a)(3) to causes of action that accrued prior to the enactment of that statute would defeat this purpose of the IDEA by permitting claims to be brought long after their accrual date. Accordingly, we hold that the application of the equitable tolling rule to such cases, including this one, would "defeat the goals" of the IDEA.[3]

\* \* \* \* \* \*

As we held above, plaintiffs' claims accrued on January 12, 1994—more than two years before they requested a due process hearing on this matter. Because the equitable tolling rule of § 10–76h(a)(3) is not applicable in this case, plaintiffs' IDEA claims are time-barred.

### E. *Rehabilitation Act Claims*

In *Morse v. Univ. of Vermont,* 973 F.2d 122, 127 (2d Cir.1992), we held that all "actions under § 504 of the Rehabilitation Act are governed by the state statute of limitations applicable to personal injury actions." In Connecticut, § 52–577 provides a three-year limitations period for all tort actions including personal injury claims. Because plaintiffs' claims accrued more than three years before they requested a due process hearing, their Rehabilitation Act claims are also time-barred.

### CONCLUSION

We have considered all of the plaintiffs' remaining claims on appeal and have concluded that they are without merit. Accordingly, the judgment of the District Court granting defendant's motion for summary judgment is affirmed.

---

**3.** In view of our holding, we need not discuss the evidence presented in the District Court after remand bearing on whether plaintiffs had notice of the limitations period.