NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1619
_____

A.B., through his parent KATINA B.,
                                                    Appellants

v.

ABINGTON SCHOOL DISTRICT
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-19-cv-01914)
District Judge:  Honorable Wendy Beetlestone
_____

Submitted under Third Circuit L.A.R. 34.1(a)
December 17, 2020
_____

Before: GREENAWAY, JR., SHWARTZ, and FUENTES, Circuit Judges.

(Filed: January 8, 2021)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

SHWARTZ, Circuit Judge.

A.B., through his parent Katina B. ("Parent"), appeals the District Court's order affirming the decision of a Pennsylvania Special Education Hearing Officer ("Hearing Officer") denying Parent's claim for private school tuition reimbursement. Because the District Court appropriately concluded that the Abington School District's (the "District") responsibilities under the Individuals with Disabilities Education Act ("IDEA") were not triggered and that reimbursement is not owed, we will affirm.

I

A.B. was diagnosed with Autism Spectrum Disorder and received special education services pursuant to an Individualized Education Plan ("IEP") from the District from first through fourth grades. Parent was dissatisfied with the autism support and speech therapy A.B. received. So, in June 2016, at the end of A.B.'s fourth-grade year, Parent decided to enroll him at the private Abington Friends School ("AFS").

On September 13, 2016, after A.B. began fifth grade at AFS, the District sent Parent a letter indicating that it "believe[d] that it c[ould] provide an appropriate program for [A.B.]" and explaining that if Parent wanted to return A.B. to public school, she should contact the District "to arrange for a registration date and time" and to conduct an IEP meeting. App. 493.

More than a year later, on October 13, 2017, Parent emailed Dr. James Etlen, principal of the District's elementary school, stating that she was "interested in finding out what programs the district can offer [A.B.], please let me know." App. 497. Parent

2

and Dr. Etlen had a conversation on December 21, 2017, which Dr. Etlen memorialized in an email to Parent, writing, "[p]er our conversation, since [A.B.] will be entering 7th grade in the fall I believe Dr. Matt Wexler, coordinator of student services at the junior high[,] would be best to answer your questions regarding programming for next year." App. 667. Dr. Etlen also provided Parent with Dr. Wexler's contact information. Separately, Dr. Etlen emailed Dr. Wexler, advising him that Parent would be contacting him about seventh-grade (i.e., 2018-2019) programming for A.B.

On January 29, 2018, Parent emailed Dr. Wexler, asking "what programs the school district can offer." App. 671.[1] Shortly thereafter, Dr. Wexler spoke to Parent, describing in general terms what special education services were available for students like A.B. at the District's junior high school.[2]

That spring, Parent separately requested an evaluation of A.B.'s sister, who was then attending private school, "to determine if [she] is eligible for special education services and programming in [the District]." App. 680. Following residency verification, Parent spoke to Dr. Robert Rosenthal, the District's Supervisor of Pupil Services, about the evaluation process for her daughter.

---

[1] This one-sentence email does not mention A.B. or his grade level.
[2] Parent testified that she did not recall this conversation. Though Dr. Wexler could not specifically recall "who the call was with," he testified that he had reason to believe it must have been Parent because of the timing, substance, and context of the discussion. App. 326-28.

3

Parent did not contact the District about services for A.B. again until August 17, 2018, when she emailed Dr. Wexler that the District "has [not] offered an appropriate program and placement for [A.B.] . . . leaving us with no other option but to continue [A.B.'s] enrollment at [AFS] for the 2018-2019 school year" and requesting that "the school district fund the tuition." App. 672. The District responded by letter dated August 20, 2018, stating that it did not believe it had an obligation to fund A.B.'s tuition at AFS, since Parent unilaterally withdrew him in 2016 and had not requested or completed District re-enrollment.[3]

Parent filed a special education due process complaint against the District, alleging that A.B. was denied a free and appropriate public education ("FAPE") for the 2017-2018 and 2018-2019 school years, in violation of the IDEA, 20 U.S.C. § 1400 et seq., the Rehabilitation Act, 29 U.S.C. § 794, and state law, and seeking tuition reimbursement. After hearing testimony from Parent, Dr. Etlen, Dr. Wexler, Dr. Rosenthal, and Mark Smith, Assistant Director of the middle school at AFS, the Hearing Officer held that Parent was not entitled to relief. Specifically, the Hearing Officer found that Parent's "vague questions" to administrators did not convey a clear interest in enrolling A.B. in a District special education program for either school year at issue. App. 12. The Hearing Officer also found that while A.B. remained eligible for special education services due to

---

[3] The District also included a Permission to Evaluate ("PTE") form for Parent to complete if she wanted to begin the evaluation and re-enrollment process for the 2018-2019 school year. Parent completed the PTE on August 30, 2018, and the District promptly began an evaluation. The evaluation is the subject of a separate case.

his previous classification, Parent's inquiry did not place the District on notice that it had a duty to evaluate and propose programming for A.B. The Hearing Officer explained that, absent such notice, the District was not required to reimburse tuition.

Parent filed a Complaint in the District Court, seeking reversal of the Hearing Officer's decision. The District answered, and both parties moved for Judgment on the Administrative Record. The District Court granted the District's motion, denied Parent's, and affirmed the Hearing Officer's opinion. The District Court agreed that Parent never objectively manifested a desire to reenroll A.B. for either school year, nor conveyed to the District a request to evaluate him, and so it had no responsibility to evaluate A.B., propose an IEP, or provide tuition reimbursement.

Parent appeals.

## II[4]

"Under the IDEA, a state receiving federal educational funding must provide children within that state a [FAPE]." C.H. ex rel. Hayes v. Cape Henlopen Sch. Dist.,

---

[4] The District Court had jurisdiction under 20 U.S.C. § 1415(i)(2) and 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291. We review questions of law de novo, K.D. ex rel. Dunn v. Downingtown Area Sch. Dist., 904 F.3d 248, 254 (3d Cir. 2018), and "findings of fact for clear error," D.S. ex rel. A.S. v. Bayonne Bd. of Educ., 602 F.3d 553, 564 (3d Cir. 2010) (citing Mary T. v. Sch. Dist. of Phila., 575 F.3d 235, 242 (3d Cir. 2009)).

District courts examine appeals of state administrative decisions under IDEA using a "modified de novo" standard. Id. (citing P.P. ex rel. Michael P. and Rita P. v. West Chester Area Sch. Dist., 585 F.3d 727, 734 (3d Cir. 2009)). This requires courts to give "due weight" to factual findings of the Hearing Officer, and to explain any deviation from those findings. Id. (citing West Chester, 585 F.3d at 734).

606 F.3d 59, 65 (3d Cir. 2010) (citing 20 U.S.C. §§ 1412(a)(1)(A), 1401(9)). "The FAPE required by the Act is tailored to the unique needs of the child" through an IEP. Id. Where, as here, a parent unilaterally places the child in a private school, the student does not have a right to all the services the public school would provide, nor must the public school continue to prepare an IEP for that child each year. See 20 U.S.C. § 1412(a)(10)(A)(i) (describing school district's responsibilities for children enrolled in private school, which do not include maintaining an IEP); 34 C.F.R. § 300.137(a) ("No parentally-placed private school child with a disability has an individual right to receive some or all of the special education and related services that the child would receive if enrolled in a public school."); see also MM ex rel. DM v. Sch. Dist. of Greenville Cnty., 303 F.3d 523, 536 (4th Cir. 2002) ("A school district is only required to continue developing IEPs for a disabled child no longer attending its schools when a prior year's IEP for the child is under administrative or judicial review." ). Instead, to trigger a public school district's responsibilities under IDEA, a parent who enrolls a child in a private school must request an evaluation or begin the public school enrollment process. Once these IDEA requirements are triggered, private school tuition reimbursement is an appropriate remedy only where "there has been a substantive harm—namely, that 'the [school district] ha[s] not made a [FAPE] available to the child in a timely manner.'" C.H., 606 F.3d at 67 (quoting 20 U.S.C. § 1412(a)(10)(C)(ii)) (third alteration in original); see also Warren G. ex rel. Tom G. v. Cumberland Cnty. Sch. Dist., 190 F.3d 80, 84 (3d Cir. 1999) ("[W]hen parents unilaterally withdraw their children from public

6

school, absent mitigating circumstances, they are not entitled to reimbursement for private school tuition until they request review proceedings." (citing Bernardsville Bd. of Educ. v. J.H. ex rel. J.H., 42 F.3d 149, 156-58 & n.14 (3d Cir. 1994))).[5]

Here, the Hearing Officer and the District Court properly concluded that Parent's emails and conversations with Dr. Etlen and Dr. Wexler did not trigger the District's responsibilities under IDEA. When Parent withdrew A.B. in 2016, the District informed her of the procedures to re-enroll him in the public school. She followed these procedures with A.B.'s sibling, which showed that she understood how to request a special education evaluation. Parent, however, never made a similar request for A.B. Instead, she merely indicated she was "interested in finding out what programs the district can offer," App. 497, and had a general conversation with Dr. Wexler about the junior high school's special education programming.[6]

While a parent need not affirmatively enroll their child in public school to receive an offer of a FAPE, see James ex rel. James v. Upper Arlington City Sch. Dist., 228 F.3d 764, 768 (6th Cir. 2000) (where parents "specifically approached the school district about

[5] Parent bears the burden of proof on an IDEA claim. See Schaffer ex rel. Schaffer v. Weast, 546 U.S. 49, 51 (2005).

[6] As previously noted, Parent testified that she did not recall this conversation. The Hearing Officer, however, found Dr. Wexler's testimony "to be more reliable than that of the Parent on" the issue of whether they spoke. App. 11. We accept the Hearing Officer's credibility determinations "unless the non-testimonial, extrinsic evidence in the record would justify a contrary conclusion." Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel. P.S., 381 F.3d 194, 199 (3d Cir. 2004) (emphasis omitted). No such evidence exists here.

7

re-enrollment and obtaining a new IEP," the district violated IDEA by "refusing to do an IEP pre-enrollment"), she must either manifest an intent to enroll the child or request an evaluation, see id.; Durbrow v. Cobb Cnty. Sch. Dist., 887 F.3d 1182, 1192-93 (11th Cir. 2018) (noting that parents' general requests for "help" or "testing" did not "amount to a parental request for an IDEA evaluation" or trigger the school district's statutory responsibilities (emphasis omitted)).[7]  Parent's statements here do not reflect an intent to re-enroll A.B. or constitute a request for an evaluation.  Just as "general expressions of concern" do not "constitute a 'parental request for evaluation' under the plain terms of the statute," D.K. ex rel. Stephen K. and Lisa K. v. Abington Sch. Dist., 696 F.3d 233, 247 n.5 (3d Cir. 2012) (emphasis omitted), Parent's general inquiry about programs did not trigger the District's IDEA obligations either, see 20 U.S.C. § 1415(d)(1)(A)(i) (requiring a school district to provide IDEA entitlements "upon . . . parental request for evaluation").  Because we conclude that the District did not deny A.B. a FAPE for the 2017-2018 and 2018-2019 school years, the District Court correctly held that Parent is not entitled to tuition reimbursement.  See Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter, 510 U.S. 7, 15-16 (1993) (holding that to be entitled to tuition reimbursement, a parent must show that the "public placement violated IDEA" by failing to provide a

---

[7] See also I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist., 842 F. Supp. 2d 762, 772 (M.D. Pa. 2012) (collecting cases and noting that "where a parent either re-enrolls their child in the public school or requests evaluations with the intention of re-enrolling the student, the public school is required to evaluate the child and develop an IEP for the purposes of proposing a FAPE").

8

FAPE, "the private school placement was proper under [IDEA]," and equitable principles require that the district be held responsible in whole or in part).[8]

### III

For these reasons, we will affirm the District Court's order.

---

[8] The District Court also properly concluded that A.B.'s claims under Section 504 of the Rehabilitation Act fail for the same reasons. See D.K., 696 F.3d at 253 n.8 ("[O]ur finding that the School District did not deny [the student] a FAPE is equally dispositive of [the student's] § 504 claim.")