**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 10-2602

_____

R.R., L.R., D.R.
Appellants

v.

MANHEIM TOWNSHIP SCHOOL DISTRICT

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court  No.2-05-cv-01283
District Judge: The Honorable Eduardo C. Robreno

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 27, 2011

Before: McKEE, *Chief Judge*, and SMITH, *Circuit Judges*,
and STEARNS, *District Judge*[*]

(Filed: February 10, 2011)

_____

OPINION

_____

STEARNS, *District Judge*


L.R through her parents appealed to the United States District Court for the Eastern

District of Pennsylvania from a decision of the Special Education Appellate Panel denying

_____

[*] The Honorable Richard G. Stearns, United States District Judge for the United
States District Court of Massachusetts, sitting by designation.

L.R. tuition reimbursement from the Manheim Township School District (School District) for the 2002-2003 school year. L.R. asked the District Court, among other things, to reverse the rulings of the hearing officer and the Appellate Panel, and to declare the School District in violation of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 et seq.;[1] the Rehabilitation Act of 1973, § 504(a), 29 U.S.C. § 794(a); the Federal Civil Rights Act, 42 U.S.C. § 1983; and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132.

In a series of four memoranda and orders, the District Court dismissed each of these claims. The two initial orders were issued by Judge Clifford Green, who in his first order dismissed without prejudice L.R.'s IDEA claims pertaining to her school years prior to 2002-2003 (March 30, 2007 Order). In his second order, Judge Green dismissed L.R.'s parallel claims under the Rehabilitation Act, the ADA, and the Civil Rights Act (May 24, 2007 Order). Both dismissals were based on the failure of L.R.'s parents to exhaust available administrative remedies. In two subsequent orders, Judge Robreno dismissed L.R.'s 2002-2003 school year IDEA claims (March 26, 2008 Order), and later dismissed L.R.'s Rehabilitation Act and ADA claims (May 13, 2010 Order).[2] L.R. appeals to this Court from the final judgment entered by the District Court on May 13, 2010.

L.R. was born on December 8, 1988, and is now twenty-two years old. L.R. has

---

[1] The IDEA, a federal special education funding statute, obligates participating States, including Pennsylvania, to provide a free appropriate public education (FAPE) to special needs children such as L.R. It confers jurisdiction on the federal courts to oversee this mandate and authorizes parents to bring a private enforcement action on behalf of a special needs child.

[2] Judge Green died on May 31, 2007. L.R.'s case was then reassigned to Judge Robreno.

speech and language impediments that the parties agree constitute a disability under IDEA. L.R. attended the Manheim schools from the first through the sixth grade. The parents agree that L.R's progress was "successful" through the fifth grade and that "her speech . . . did improve dramatically as a consequence of the [School District's providing of] articulation therapy" during that period.

The following year, L.R. left elementary school to begin the sixth grade. She found the change in environment and curriculum disorienting. Her classrooms were housed in a separate building that L.R. found "busy, noisy and confusing." L.R.'s classroom schedule consisted of forty-minute blocks of time, while her language therapy was limited to thirty minutes each week. The parents and Dr. Thomas Kelly, the family's consulting psychologist,[3] were concerned that the accelerated schedule failed to accommodate L.R.'s needs. They believed that L.R.'s sixth through seventh grade IEP lacked "goals or interventions for [L.R.'s] receptive language skills," and that her "classroom teachers were [unrealistically] expected to address L.R.'s language deficits." The parents were also concerned that L.R.'s sixth grade teachers were not committed to collaborating with Dr. Kelly in devising curriculum and programmatic intervention for L.R.[4]

---

[3] Dr. Kelly, a Director of Pupil Personnel in the Hendrick Hudson School District and an adjunct professor at Columbia University's Teachers College and Center for Educational and Psychological Services, "worked with [L.R. and her parents] over the years, helping them select curriculum and develop classroom-based approaches designed to reach L.R. at her functional level." One approach recommended by Dr. Kelly was repetitive instruction. He believed that L.R. learned best by staying with an academic task until she was fully able to retain it.

[4] The hearing officer noted that the IEP team had reevaluated L.R. in the second half of her sixth grade year. According to the hearing officer, the Evaluation

As the academic year progressed, L.R. became increasingly frustrated and failed ultimately to meet her IEP goals. Believing that her "self-esteem had plummeted . . . and that she was regressing in some academic skills," the parents removed L.R. from the Manheim schools and placed her at Maplebrook Academy, a private residential school in New York, for seventh grade. Appellant's Br. at 9. After L.R. successfully completed the seventh grade, the parents re-enrolled her at Maplebrook for the eighth grade and sought reimbursement of L.R.'s tuition from the School District.

On November 19, 2002, the School District completed an IEP for L.R.'s eighth-grade year (2002-2003), which the parents rejected. They invoked their right to a due process hearing. A four-day hearing began on December 6, 2002. On February 4, 2003, the hearing officer issued a twenty-one page decision in which he concluded that the School District had offered L.R. a FAPE for the 2002-2003 school year. Consequently, he held that L.R.'s parents were not entitled to reimbursement for her tuition and related costs.

L.R.'s parents appealed to the Special Education Appellate Panel. The Panel affirmed the hearing officer's decision finding L.R.'s 2002-2003 IEP "far from optimal but not fatally inadequate."[5] The Panel, however, ordered the School District to conduct a

---

Report contained teacher comments indicating that L.R. was having a good year, and that it included "Dr. Kelly's observations and suggestions. There was no disagreement regarding the Evaluation Report."

[5] The Panel found the IEP lacking in that "[s]ome annual goals and shorter-term objectives are not completely clear and therefore the potential exists for some difficulty in measuring [L.R.'s] progress objectively, at times it is unclear how the present levels of educational functioning are related to instructional goals and objectives, and the IEP does not provide specifically designed instruction to achieve some of her goals."

4

reevaluation of L.R. and to prepare a new IEP for the 2003-2004 school year. The School District complied, completing the reevaluation on September 2, 2003.

On March 21, 2005, L.R.'s parents filed this action in the District Court seeking tuition reimbursement, monetary damages for "the loss of educational opportunities, loss of language therapy opportunities and emotional damages [L.R.] ha[d] suffered," attorneys' fees, and expert witness fees. The School District moved to dismiss the non-IDEA counts of the Complaint (Counts II through V) arguing that only Count I, the IDEA-based appeal of the Panel decision, was ripe for adjudication. In his March 30, 2007 Order, Judge Green granted the motion in part, dismissing without prejudice Count II, which sought monetary damages under IDEA for the "loss of educational opportunities" during L.R.'s pre-2002-2003 school year. Judge Green addressed the claim in pertinent part as follows.

> At no point in [the due process hearing] proceedings did Plaintiffs or the District raise, nor did the Hearing Officer or Special Education Appeals Panel address, whether L.R. should have been evaluated earlier or provided with critical language therapy as Plaintiffs contend. Plaintiffs maintain that they are not seeking compensatory education for this loss, but instead are only seeking monetary damages for Plaintiffs' claimed damages in this Count. However, in order for this court to determine the merits of Plaintiffs' claim the court must first determine whether and when the District was obligated to evaluate L.R.'s language needs. Were the court to pursue this line of inquiry, the court would also be required to determine whether the educational program offered during L.R.'s early years provided her with a free appropriate public education under which she could have made meaningful academic progress. Although Plaintiffs offer expert reports and opinions about L.R.'s loss of educational opportunity in her early years the District has not been provided with an opportunity, at the administrative level, to be heard on the issue and to attempt to rebut or resolve the claim.

March 30, 2007 Order at 8.

The School District moved for clarification or reconsideration of the District Court's ruling as to the non-IDEA claims. The School District argued that the damages component

of the claims based on events prior to L.R.'s 2002-2003 school year were also barred by the failure to exhaust. In response, L.R.'s parents acknowledged that they had "accepted all of the IEP's through L.R.'s 6th grade year, even knowing that she was not receiving sufficient language therapy but believing that the District's willingness to collaborate with their expert to appropriately modify the curriculum would sufficiently address L.R.'s needs." In his May 24, 2007 Order, Judge Green, citing the IDEA's two-year statute of limitations, reaffirmed his earlier dismissal of the IDEA claims, and also dismissed L.R.'s Rehabilitation Act, ADA, and § 1983 claims on exhaustion grounds. On June 4, 2007, L.R.[6] petitioned the District Court for leave to take an interlocutory appeal to the Third Circuit.[7] On June 21, 2007, the School District moved for partial summary judgment arguing that L.R. had failed to show that her 2002-2003 IEP was deficient.

On March 26, 2008, Judge Robreno issued an order denying L.R.'s request to take an interlocutory appeal and allowed the School District's motion for partial summary judgment. After a review of Judge Green's previous orders, Judge Robreno agreed that "to the extent that any claim seeks relief that is 'available' under the IDEA, the IDEA's administrative remedies must be exhausted before such an action is brought." *L.R. v. Manhein Twp. Sch.*

---

[6] As L.R. had turned eighteen on May 16, 2007, an Amended Complaint substituted L.R for her parents as the named plaintiff.

[7] In seeking an interlocutory appeal, L.R. cited *W.B. v. Matula*, 67 F.3d 484 (3d Cir. 1995) for the proposition that "parties do not need to exhaust their administrative remedies for actions brought for monetary damages under § 504 and the ADA even in an IDEA related case." *Matula* was, however, abrogated by *A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791 (3d. Cir 2007).

*Dist.*, 540 F. Supp. 2d 603, 611 (E.D. Pa. 2008) (citing 20 U.S.C. § 1415(l)).[8]  He further found that while the composition of L.R.'s IEP team had violated IDEA (the regular education teacher who attended the meeting had not taught L.R.), *see Fuhrmann v. E. Hanover Bd. of Educ.*, 993 F.2d 1031, 1036 (3d Cir. 1993), the error was harmless. *Manheim Twp. Sch. Dist.,* 540 F. Supp. 2d at 616.  He also noted that the 2003 evaluation had no logical bearing on the preparation of L.R.'s pre-2003 IEPs.  *Id.* at 620.

On April 24, 2008, L.R. appealed Judge Robreno's March 26, 2008 Order to this Court.  On December 22, 2008, we dismissed the appeal for lack of jurisdiction because the Order was not "final" within the meaning of 28 U.S.C. § 1291.  L.R. then filed a motion in the District Court for judgment on her remaining claims.  She made two arguments: (1) that the School District's failure to undertake a comprehensive language evaluation of L.R. constituted discrimination under the Rehabilitation Act and the ADA; and (2) that the IEP prepared for the 2002-2003 school year was grossly inadequate given her needs, and therefore constituted disability discrimination.  On May 13, 2010, Judge Robreno denied

---

[8] Section 1415(l) states:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, *except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.* (Emphasis added).

L.R.'s motion, finding *Fuhrmann* "equally applicable to [claims under] § 504 and the ADA," and entered judgment for the School District. L.R. filed this timely appeal on June 2, 2010.

When reviewing an administrative hearing decision under the IDEA, a District Court is to apply a modified de novo standard. *Ramsey Bd. of Educ*, 435 F.3d at 389. Under that standard, due weight must be given to administrative determinations; the factual findings of the administrative tribunal are given a prima facie presumption of correctness. *See Shore Reg'l High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 199 (3rd Cir. 2004); *Mary T. v. Sch. Dist. of Philadelphia*, 575 F.3d 235, 241 (3d Cir. 2009); *Lauren W. v. DeFlaminis*, 480 F.3d 259, 266 (3rd Cir. 2007). There is a reason for insisting on administrative review and the heightened level of deference accorded to its results: judicial review is "by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982).[9] A Court of Appeals, for its part, reviews the District Court's factual findings for clear error and exercises plenary review over its determinations of law. *Mary T.*, 575 F.3d at 241-242.

"[W]hen a public school fails to provide a FAPE and a child's parents place the child in an appropriate private school without the school district's consent, a court may require the

---

[9] As one of our sister Circuits has aptly observed, "[a]llowing plaintiffs to bypass the IDEA's administrative process en route to state or federal court disrupts this carefully calibrated balance and shifts the burden of factfinding from the educational specialists to the judiciary." *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 61 (1st Cir. 2002).

district to reimburse the parents for the cost of the private education."[10] *Forest Grove Sch. Dist. v. T.A.*, 129 S.Ct. 2484, 2496 (2009). What constitutes an "appropriate education" is defined by the IDEA, 20 U.S.C. § 1401(18), and the interpretive case law. *See Rowley*, 458 U.S. at 186 n.8. Whether an IEP has made a FAPE available to a child is a question of fact. *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564, 564 (3d Cir. 2010).

We agree with the District Court that review is confined to issues pertaining to L.R.'s 2002-2003 IEP. The claims involving the School District's alleged refusal "to offer objective evaluations of L.R. over the years," the alleged deprivation "of critical language therapy during her early years," an alleged loss of self-esteem and other lost opportunities, and the continuing impact of these alleged violations, could have been raised and heard as part of L.R.'s IDEA claim in the administrative proceedings, but were not.[11] (L.R. does not dispute that her ADA and Rehabilitation Act claims are derivative of the IDEA inquiry). While we do not go so far as to preclude the prosecution of ADA and Rehabilitation Act claims related to IDEA violations, we require that such claims be submitted in the first instance to the administrative tribunal when the relief sought is essentially the same as that available under

---

[10] The School District stipulates to the appropriateness of the Maplebrook School as an alternative placement, although it disagrees that it meets the criterion of "least restrictive environment."

[11] In *Jersey City Pub. Schs.*, we held that under the IDEA "any aggrieved party may 'present a complaint . . . with respect to *any matter* relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child.'" *Id.*, 486 F.3d at 802 (emphasis added), quoting 20 U.S.C. § 1415(b)(6).

the IDEA.[12]  In other words, for an ADA or Rehabilitation Act damages claim to survive the exhaustion doctrine, it must be based on a set of circumstances for which IDEA does not provide or contemplate a remedy.  We have similarly observed that because "IDEA provides a comprehensive remedial scheme . . . Congress did not intend § 1983 to be available to remedy violations of the IDEA." *Jersey City Pub. Schs.*, 486 F.3d at 806.

In her appeal to this Court of the denial of tuition reimbursement (the only claim properly before us), L.R.'s principal complaint is that the District Court erred in failing to give deciding weight to the School District's failure to perform a timely "comprehensive language evaluation."  L.R. maintains that when the School District finally undertook a comprehensive language evaluation in September 2003, it failed to implement the findings (L.R.'s parents describe the evaluation as having "proved that L.R.'s needs were far more intense than [the School District] had . . . programmed for . . . .").  However, based on our own review, we agree with the District Court that L.R. failed to demonstrate that additional testing was *required* prior to the preparation of 2002-2003 IEP (no matter how desirable it might have been).  Nor do we see error in the District Court's refusal to give the 2003 language assessment any weight in reviewing the sufficiency of an IEP prepared a year earlier. *See Fuhrmann*, 993 F.2d at 1040 ("Our understanding of *Rowley* comports with that of the district court; that the measure and adequacy of an IEP can only be determined as of the time it is offered to the student, and not at some later date.").

---

[12] We are mindful, as was the District Court, that our discussion in *Jersey City Pub. Schs.* was focused on *Matula's* § 1983 holding.  We agree, however, with the District Court's ultimate conclusion that 20 U.S.C. § 1415(l) requires that IDEA-related claims brought under the ADA or the Rehabilitation Act be submitted in the first instance to administrative review.

For the reasons stated, we will affirm the judgment of the District Court.