**I.H., by his legal guardian, D.S., Plaintiffs,**

v.

**CUMBERLAND VALLEY SCHOOL DISTRICT and William Harner, Superintendent, Defendants.**

No. 1:11–cv–00574.

United States District Court, M.D. Pennsylvania.

Feb. 8, 2012.

Judith A. Gran, Haddonfield, NJ, Phillip A. Drumheiser, Carlisle, PA, for Plaintiffs.

Ellis H. Katz, Jennifer N. Donaldson, Mark C. Walz, New Britain, PA, for Defendants.

## MEMORANDUM & ORDER

JOHN E. JONES III, District Judge.

## I. INTRODUCTION

Pending before the Court is the Motion to Dismiss (Doc. 14) of Defendants Cumberland Valley School District and William Harner, Superintendent. For the reasons detailed herein, we shall grant in part and deny in part said Motion.

## II. PROCEDURAL HISTORY & STATEMENT OF FACTS

In accordance with the standard of review applicable to a motion to dismiss, the following facts are derived from the Plaintiff's Complaint and are viewed in a light most favorable to the Plaintiff.

Plaintiff I.H. ("Plaintiff") is a middle school student with disabilities who resides with his grandmother and guardian, D.S. ("Plaintiff's Guardian"), in the Cumberland Valley School District in the Middle District of Pennsylvania. (Doc. 1, ¶ 6). Defendant Cumberland Valley School District ("Defendant School District") is a public educational agency with its office located at 6746 Carlisle Pike, Mechanicsburg, Pennsylvania 17050. (Id. ¶ 10). Defendant William E. Harner ("Defendant Harner") is the Superintendent of the Defendant School District, responsible for the administration of educational programs, including special education services, within the Defendant School District. (Id. ¶ 11).

Plaintiff has resided in the Defendant School District since the summer of 2006, when he came to live with his guardian. (Id. ¶ 12). Plaintiff began school in the Defendant School District that year. (Id.). Plaintiff's Guardian noticed that Plaintiff was struggling in school, and on January 19, 2007, Plaintiff's Guardian wrote to Dr. Stephanie Bowen of Sporting Hill Elementary School requesting a complete evaluation of Plaintiff under the Individuals with Disabilities Education Act ("the IDEA"). (Id. ¶ 14). An Initial Evaluation was eventually provided on May 30, 2007, four months after Plaintiff's Guardian wrote to the Defendant School District. (Id. ¶ 16). The report identified Plaintiff as having an "emotional disturbance" and "experiencing academic and behavioral difficulties" and recommended itinerant emotional and written language support. (Id. ¶ 16–17). Plaintiff began to receive special education services at the beginning of the 2007–2008 school year. (Id. ¶ 17).

Plaintiff continued to struggle in school, particularly in math, organization, and reading. (Id. ¶ 18). According to Plaintiff's Guardian, she spent upwards of two and one-half hours per night with Plaintiff on his homework, reporting that he was

overwhelmed and upset when he had to take a test. (*Id.*). Plaintiff's Guardian continued to provide Plaintiff's teachers with diagnostic information from outside evaluators documenting Plaintiff's diagnosis as Asperger Syndrome and associated social interaction deficits, requesting a re-evaluation. (*Id.* ¶ 19). During the 2008–2009 school year, the Defendant School District reevaluated Plaintiff but did not change his eligibility classification or his IEP to reflect the Asperger Syndrome diagnosis or his difficulties in math. (*Id.* ¶ 20). Plaintiff's Guardian continued to provide the school with additional documentation of Plaintiff's Asperger Syndrome and ADHD diagnoses, requesting additional support for Plaintiff's difficulties in math, to no avail. (*Id.* ¶ 21).

In its initial evaluation report in 2006–2007, when Plaintiff was in third grade, the District identified Plaintiff as suffering from "impulsivity" and concluded that a Functional Behavior Analysis ("FBA") must be conducted. (*Id.* ¶ 26). However, an FBA was not conducted until Plaintiff's fifth grade year. (*Id.*). The FBA was based entirely on the conclusions of Plaintiff's learning support teacher, who did not observe Plaintiff in formal classroom environments and did not have experience or training as a behavioral analyst. (*Id.* ¶¶ 26–27).

At the beginning of the 2008–2009 school year, when Plaintiff was in fifth grade, Plaintiff received itinerant learning support and was pulled out of his regular classes for one or two half-hour sessions with an emotional support teacher per week. (*Id.* ¶ 22). During that year, writing was one of Plaintiff's biggest areas of stress, and he wrote slowly and with difficulty, making math word problems difficult for him. (*Id.* ¶¶ 24–25). Plaintiff's IEP, which had previously lacked any math goals or instruction, was amended to contain a specially-designed instruction that Plaintiff was required to complete only half of the designated math homework per evening. (*Id.* ¶ 25).

In the 2009–2010 school year, after having finished elementary school, Plaintiff moved to Good Hope Middle School, where he was overwhelmed by the number of classes and the amount of information he was expected to quickly process. (*Id.* ¶ 29). Plaintiff continued to struggle with math homework, but for unknown reasons, the Defendant School District removed the instruction to reduce Plaintiff's math homework by half from his IEP. (*Id.* ¶ 30). According to Plaintiff's Guardian, rather than helping him with the concepts, Plaintiff's teachers "mocked him" for failing to "get" the concepts. (*Id.* ¶ 31).

Plaintiff began suffering from a great deal of stress in the fall of his sixth grade year; he began spitting up blood during school, and a gastroenterologist diagnosed his condition as being stress-related, finding that increased stress would cause his esophagus to spasm, causing blood vessels to rupture and Plaintiff to cough up blood. (*Id.* ¶ 32). In November of 2009, overwhelmed by his workload and the stress, Plaintiff confided to his emotional support teacher that he wanted to "end it all," which prompted an emergency meeting to discuss Plaintiff's condition. (*Id.* ¶ 34). The Defendant School District's solution was to amend Plaintiff's IEP to provide that he "will not be required to complete homework other than studying for tests." (*Id.* ¶ 35).

On December 1, 2009, Plaintiff's IEP was changed without the statutorily-required IEP team meeting. (*Id.* ¶ 37). Plaintiff's Guardian consented to the change, which placed Plaintiff in a learning support classroom for the first four periods of each school day, because she was "ready to give up" and "did not know what

to do to help her grandson." (*Id.* at ¶¶ 37–38). Plaintiff's Guardian was informed that the placement was temporary, at most two weeks, pending a psychiatric evaluation of Plaintiff; in fact, the placement continued for at least four to five weeks. (*Id.* ¶ 38).

The Defendant School District issued a Reevaluation Report on December 2, 2009, nearly identical to the 2008 report, which identified Plaintiff's school as "Hill Top Academy," a partial hospitalization program operated by the Capital Area Intermediate Unit ("CAIU"). (*Id.* ¶ 40). After the report was signed by Plaintiff's Guardian, a paragraph was added without her knowledge or consent which stated that "[Plaintiff] will benefit from consideration" for placement at Hill Top Academy. (*Id.* ¶ 41). On December 4, 2009, Plaintiff's IEP was amended so that Plaintiff was to attend school only for half days, in order to address his anxiety. (*Id.* ¶ 42). Plaintiff was assigned a Therapeutic Support Staff ("TSS") worker to work with him during those half days, but the Defendant School District "abandoned this support" after only four days. (*Id.* ¶ 43).

At a meeting on January 6, 2010, the Defendant School District decided to place Plaintiff in a partial hospitalization program at Hill Top Academy, a decision which Plaintiff alleges was made well before she was advised of it on January 6, 2010. (*Id.* ¶ 44). Plaintiff's Guardian was informed that the academy's one-on-one attention and therapeutic services made it the "perfect program" for Plaintiff. (*Id.* ¶ 45). Plaintiff's Guardian consented to this placement based on this representation. (*Id.*). The Defendant School District failed to inform Plaintiff's Guardian that Hill Top is a school for severely emotionally and behaviorally disturbed children which regularly has to call the police to handle problems with students. (*Id.*).

There was no discussion at the January 6, 2010, meeting as to possible alternative supplementary aids and services which might permit Plaintiff to remain in his neighborhood school. (*Id.* ¶ 46).

When Plaintiff began attending Hill Top in early January of 2010, he suffered severe emotional trauma from the violence he witnessed and the threats of violence he experienced from other students, and when he threw up blood, the school nurse did not take his concerns seriously. (*Id.* ¶ 47). Plaintiff's Guardian removed Plaintiff from Hill Top after he came home sobbing on his second day, and Plaintiff's physician prescribed homebound instruction. (*Id.*). Plaintiff finished the 2009–2010 school year on homebound instruction, taught by a special education teacher who came to his home five days a week. (*Id.* ¶ 48). Plaintiff's Guardian requested reading instruction but was informed that the school district does not provide reading instruction when students are homebound. (*Id.*).

The Defendant School District refused to revise Plaintiff's IEP to provide the educational services that he needed, and instead sought to change his placement to an emotional support classroom at Eagle View Middle School, which is not his neighborhood school, for Extended School Year ("ESY") services. (*Id.* ¶ 49). Plaintiff's request to receive supplementary education services at his neighborhood school, Good Hope Middle School, or to be educated in a regular classroom, were denied. (*Id.*). Plaintiff had such fear of emotional support classrooms following his experience at Hill Top Academy that he was "unable" to receive ESY services during the summer of 2010. (*Id.* ¶ 50).

In early 2010, Plaintiff's Guardian retained counsel and requested an Independent Educational Evaluation ("IEE") at the Defendant School District's expense to

challenge the 2009 reevaluation. (*Id.* ¶ 51). The Defendant School District responded by filing a due process complaint defending its evaluation. (*Id.*). Plaintiff's Guardian obtained an IEE at her own expense from Alan Babcock, a certified school psychologist, who concluded that Plaintiff had "a Specific Learning Disability in math, reading fluency and written expression; ADHD and Executive Function Disorder; Emotional Disturbance; and Autism Spectrum Disorder." (*Id.* ¶ 52). Babcock determined that the Defendant School District should have identified Plaintiff's learning disabilities and autism diagnosis. (*Id.* ¶ 54).

The Hearing Officer presiding over the Defendant School District's due process action found that the 2009 evaluation was inadequate and substantially flawed, ordering a new IEE to be completed at public expense. (*Id.* ¶ 56). An IEE was completed by Dr. Richard Dowell, a neuropsychologist, at the expense of Plaintiff's Guardian because she did not believe that any of the evaluators suggested by the school district were truly "independent" of the Defendant School District. (*Id.* ¶¶ 58; 63–64). Dr. Dowell diagnosed Plaintiff with Asperger Syndrome, Learning Disorder Not Otherwise Specified, "Frontal" or Higher–Level Executive Impairment, ADHD, and Generalized Anxiety Disorder. (*Id.* ¶ 58). The Defendant School District continued to insist that Plaintiff be placed in an emotional support classroom at Eagle View Middle School for all substantial parts of the day, refusing to offer Plaintiff any less restrictive educational services at his neighborhood school. (*Id.* ¶ 65). Because the Defendant School District would not work with Plaintiff and Plaintiff's Guardian to develop a satisfactory special education plan, Plaintiff's Guardian withdrew Plaintiff from the Defendant School District and enrolled him at Agora Cyber Charter School ("Agora"), a public cyber charter school, for the 2010–2011 school year. (*Id.*).

After Plaintiff began classes at Agora, the Defendant School District held an IEP meeting at which it developed a new IEP, placing Plaintiff in an emotional support classroom at Eagle View Middle School for almost eighty percent (80%) of the day, allowing him to interact with students in the general educational curriculum only during science class and at lunch time. (*Id.* ¶ 70). In developing the IEP, the Defendant School District failed to take into account any alternative supplemental aids or services which would enable Plaintiff to remain in a regular classroom setting. (*Id.* ¶ 73). The proposed IEP also fails to provide for teaching Plaintiff planning and organizational skills. (*Id.* ¶ 72).

Plaintiff's Guardian filed the instant due process complaint, her third before the Hearing Officer, on August 25, 2010. (*Id.* ¶ 79). Most significant of the pre-hearing motions is the Defendant School District's motion to limit Plaintiff's claims, on statute of limitations grounds, to preclude claims arising prior to August 25, 2008. (*Id.*). The Hearing Officer found that the "knew or should have known" date for purposes of triggering the two-year statute of limitations was June 8, 2010, and that Plaintiff's claims were limited to those arising after June 8, 2008. (*Id.*; Doc. 21–2, p. 3). In that pretrial order, the Hearing Officer also denied the Defendants' motion to dismiss Plaintiff's claims for prospective relief, specifically declining to dismiss Plaintiff's claim that regardless of whether he had unenrolled from the Defendant School District, as his district of residence, it must provide him with an IEP. (Doc. 21–3, p. 9).

The Hearing Officer found that the Defendant School District had failed to provide Plaintiff with a free, appropriate pub-

lic education ("FAPE") from December 4, 2009, through January 6, 2010, the period of time where the Defendant School District limited Plaintiff's education to half-days, and again from January 6, 2010, through the end of the 2009–2010 school year, the period of time where Plaintiff was on homebound instruction. (Doc. 21–2, p. 15). The Hearing Officer awarded Plaintiff one half hour of compensatory education for each hour that the school district was in session from December 4, 2009, through January 6, 2010, and one hour of compensatory education for each hour that the school district was in session from January 6, 2010, through the end of the 2009–2010 school year. (*Id.*). The Hearing Officer found that Plaintiff was not entitled to an IEP from the Defendant School District because the Defendant School District was no longer Plaintiff's Local Education Agency ("LEA"). (*Id.* at p. 12).

On March 25, 2011, Plaintiff filed the instant Complaint, appealing the Hearing Officer's decision. Plaintiff seeks relief in Count I for violation of the Individuals with Disabilities Education Act (the "IDEA"), in Count II for violation of Section 504 of the Rehabilitation Act ("Section 504"), in Count III for violation of the Americans with Disabilities Act (the "ADA"), in Count IV for violation of the Pennsylvania Special Education Regulations (the "PSER"), and in Count V for violation of 42 U.S.C. § 1983. Plaintiff requests this Court to order the Defendant School District to provide him with an educational program in his neighborhood school in the least restrictive and most integrated setting appropriate to his needs as required by Section 504, order the Defendant School District to develop an adequate IEP for Plaintiff as required by the IDEA, award further compensatory education than the Hearing Officer did in order to fully compensate Plaintiff for the

Defendant School District's failure to meet his educational needs, and award Plaintiff attorney fees' and costs, including expert costs under Section 504.

On July 26, 2011, Defendants filed the instant Motion to Dismiss (Doc. 23). After a July 27, 2011, case management conference, the parties stipulated to a ninety-day briefing extension (Doc. 19) in order to explore whether the matter was amenable to mediation. Defendants filed a Brief in Support of their Motion (Doc. 23) on November 7, 2011, and Plaintiff filed a Brief in Opposition of the Motion (Doc. 24) on November 21, 2011. On December 5, 2011, Defendants filed a Reply Brief (Doc. 25). Accordingly, the instant Motion is fully briefed and ripe for our disposition.

## III. STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 231 (3d Cir.2008) (quoting *Pinker v. Roche Holdings, Ltd.,* 292 F.3d 361, 374 n. 7 (3d Cir.2002)). In resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as "documents that are attached or submitted with the complaint, ... and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.,* 452 F.3d 256, 260 (3d Cir.2006).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the

pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). To survive a motion to dismiss, a civil plaintiff must allege facts that "raise a right to relief above the speculative level. . . ." *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir.2007) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). Accordingly, to satisfy the plausibility standard, the complaint must indicate that defendant's liability is more than a "sheer possibility." *Iqbal*, 129 S.Ct. at 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

■ Under the two-pronged approach articulated in *Twombly* and later expounded upon and formalized in *Iqbal*, a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557, 127 S.Ct. 1955. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a Rule 12(b)(6) motion to dismiss. *Iqbal*, 129 S.Ct. at 1950. Next, the district court must identify "the 'nub' of the … complaint—the well-pleaded, nonconclusory factual allegation[s]." *Id.* Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id.*

■ However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips*, 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 556–57, 127 S.Ct. 1955). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

## IV. DISCUSSION

Defendants contend that several of Plaintiff's claims are subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). First, Defendants contend that Plaintiff is not entitled to relief from the Defendants after September of 2010 because, as a matter of law, the Defendant School District is no longer Plaintiff's Local Education Agency ("LEA"). Defendants also reassert the statute of limitations argument in response to Plaintiff's claim that the Hearing Officer's decision was in error. Defendants next contend that Plaintiff's claims for relief under the ADA must be dismissed for failure to exhaust administrative remedies and on the merits, that his Section 1983 claim must be dismissed because Section 1983 is not an available remedy for violations of the IDEA, and that Plaintiff's claims for expert fees fails because such a remedy is not contemplated by Section 504. Finally, Defendant Harner contends that he is entitled to qualified immunity and must be dismissed from suit. We address each argument in the order raised in Defendants' Motion.

### 1. Plaintiff's Claims for Prospective Relief

In his Complaint, Plaintiff requests this Court to order the Defendants to "provide [Plaintiff] with an educational program in his neighborhood school in the least restrictive environment and the most integrated setting appropriate to his needs" and "to develop an IEP for [Plaintiff] that appropriately and adequately addresses his learning disabilities, executive function disorder and Asperger Syndrome." (Doc. 1, ¶ IV(1), (2)).

Defendants contend that Plaintiff's claims should be dismissed to the extent that they request relief for alleged harms after the Plaintiff unenrolled from the Defendant School District. Defendants argue that at the time Plaintiff unenrolled from the Defendant School District, Agora became, for liability purposes under the IDEA, his exclusive LEA, thus relieving the Defendant School District of its responsibility to provide and direct special education services to the Plaintiff. To that same end, Defendants contend that recent amendments to the Pennsylvania Code and Pennsylvania Statutes severely limit the responsibilities of the school district of residence when the student enrolls in a charter or cyber charter school.

The Hearing Officer addressed this issue and agreed with the Defendants. Specifically, the Hearing Officer stated that "the District is under no obligation to offer an IEP to the Student because the cyber-charter has the obligation to provide FAPE to the Student." (Doc. 21–2, pp. 12–13). The Hearing Officer concluded that while the Defendant School District is obligated to provide assistance to the cyber charter school upon the cyber charter school's request, it does not bear the much more substantial burden of providing a FAPE to a student once that student has enrolled in a cyber charter school. (Id. at p. 13). The Hearing Officer concluded that "there is no authority that would compel the District to offer an IEP prior to re-enrollment, and the District will not be order[ed] to include particular content in an IEP that it has no obligation to provide." (Id.). Insofar as these arguments relate to the provision of an IEP, we respectfully disagree with both the Defendants' and the Hearing Officer's analyses.

■ To resolve this issue, it is necessary to distinguish between the provision of a FAPE and the provision of an IEP, which is, in essence, an offer of FAPE. We do not hold that the Defendants must provide Plaintiff with a FAPE while he is enrolled at the cyber charter school; we agree with the Hearing Officer and the Defendants that the burden of providing an appropriate education, consistent with the mandates of the IDEA, rests on Agora, Plaintiff's new LEA. To require such of Defendants would place a substantial burden on the school district of residence which we believe would be entirely misplaced. *See Dutkevitch ex rel. Dutkevitch v. PA Cyber Charter Sch.,* 439 Fed.Appx. 177 (3d Cir.2011) (unpublished decision) (holding that a charter school may not "pass[ ] the buck" with respect to its FAPE obligations under IDEA); *see also R.B. ex rel. Parent v. Mastery Charter Sch.,* 762 F.Supp.2d 745 (E.D.Pa.2010) ("[C]harter schools are independent LEAs and 'assume the duty to ensure that a FAPE is available to a "child with a disability" in compliance with IDEA and its implementing regulations.' "). We hasten to note that we are not resolving this question based upon the Third Circuit's non-precedential decision in *Dutkevitch,* and we are not placing inappropriate reliance thereupon, but we do find the rationale in its holding to be persuasive and sound. Accordingly, to the extent that Plaintiff's claim under the IDEA requests

this Court to order Defendants to "provide [Plaintiff] with an educational program in his neighborhood school in the least restrictive environment and the most integrated setting appropriate to his needs," the Plaintiff's claim in that respect is dismissed.

However, although we find that the IDEA does not require the school district of residence to provide a FAPE to an unenrolled student residing in its district, this finding does not resolve the entirety of Plaintiff's claim. Defendants' arguments focus almost solely on Plaintiff's request for a FAPE and seemingly ignore Plaintiff's further request that this Court order the Defendant School District to provide Plaintiff with an IEP, regardless of his enrollment status, based on his residence in the Defendant School District. The Plaintiff's Complaint makes clear, however, that Plaintiff also requests that we order the Defendant School District to provide him with an IEP so that he can weigh his alternatives with respect to re-enrollment. While this exact question—whether a student enrolled in a cyber charter school residing within a public school district is entitled to an IEP from that public school district regardless of enrollment status—has not been addressed by the Third Circuit, several well-reasoned district court opinions throughout this Circuit have found that where a parent either re-enrolls their child in the public school or requests evaluations with the intention of re-enrolling the student, the public school is required to evaluate the child and develop an IEP for the purposes of proposing a FAPE. *See Moorestown Twp. Bd. of Educ. v. S.D.,* 811 F.Supp.2d 1057, 1073 (D.N.J. 2011) ("[W]here parents either re-enroll their child in public school or request evaluations so they can re-enroll him, the district must evaluate and develop an IEP for that child for purposes of proposing a FAPE."); *A.Z. on behalf of M.Z. v. Mah-wah Twp. Bd. of Educ.,* 2006 WL 827791, 2006 U.S. Dist. LEXIS 22305 (D.N.J. Mar. 30, 2006).

Defendants argue that such a rationale has been superseded in Pennsylvania by citing to amendments to the Pennsylvania Code and Pennsylvania Statutes. Specifically, Defendants cite to 24 P.S. § 17–1744–A, which section they contend limits the responsibilities of the school district of residence to the student once the student enrolls in a cyber charter school. However, on its face, Section 17–1744–A does not in any way limit the responsibilities of the school district of residence to the *student;* it enumerates the limited responsibilities that the district of residence shall have to the *charter school.* Thus, nothing in Section 17–1744–A persuades us that the school district of residence is relieved from abiding by a request for an evaluation and IEP simply by the student unenrolling from the school district of residence and enrolling in a cyber charter school, and particularly in cases such as this, where the sole reason for the student enrolling in the charter school was the failure of the school district of residence to provide an appropriate IEP and FAPE in the first instance.

Plaintiff points to several cases, although none binding upon us, supporting his contention that as a resident student within the jurisdiction of the Defendant School District, he is permitted to request, and entitled to receive, an IEP without re-enrolling. *See James v. Upper Arlington City Sch. Dist.,* 228 F.3d 764, 768 (6th Cir.2000) ("To hold otherwise would allow the school to slough off any response to its duty until the parents either performed the futile act of enrolling their son for one day and then withdrawing him as soon as the IEP was complete, or worse, leaving the child in an arguably inadequate pro-

gram for a year just to re-establish his legal rights."); *A.Z. on behalf of M.Z. v. Mahwah Twp. Bd. of Educ.*, 2006 WL 827791, 2006 U.S. Dist. LEXIS 22305 (D.N.J. Mar. 30, 2006) ("It would strain credulity to imagine that the legislature intended that parents of a disabled child would enroll that child in a school without a program in place to deal with disabilities that the district has already diagnosed, particularly, where, as here, the parents' disagreement with the previous IEP drove them to remove the child from the public school."); *see also Moorestown*, 811 F.Supp.2d at 1069 ("[W]here parents request reevaluations of their child for purposes of having an *offer* of a FAPE made for him, and the child is domiciled in the district, the school district must comply." (emphasis added)). The rationale supporting these cases is logical: requiring enrollment as a prerequisite to obtaining an IEP, especially where that school district's initial IEP and FAPE were inadequate, would be at odds with the "remedial nature" of the IDEA. *See generally Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 129 S.Ct. 2484, 2494–95, 174 L.Ed.2d 168 (2009).

Thus, we find that the Hearing Officer erred in holding that Plaintiff is not entitled to an IEP from the Defendant School District. Pennsylvania statutory law does not, and cannot, limit the responsibilities of a public school district under the IDEA as contended by the Defendants, and the case law relied upon by the Defendants does not persuade us otherwise. On the facts as pled in Plaintiff's Complaint, the school district of residence cannot be relieved of its responsibility to provide a requested IEP under the IDEA simply because the student has not enrolled in the school district, especially where the school district's previous failure to provide an adequate IEP is the reason for the student's unenrollment in the first place. Accordingly, we deny Defendants' Motion to Dismiss Plaintiff's claim requesting an IEP from the Defendant School District.

## 2. The Statute of Limitations

Having found that the IDEA does entitle Plaintiff to prospective relief in the form of an IEP, we turn next to the Plaintiff's arguments for retrospective relief, that is, Plaintiff's argument that the statute of limitations does not bar an award of compensatory education for claims prior to June 8, 2008. Defendants contend that the statute of limitations bars Plaintiff's claim for compensatory education prior to August 25, 2008, two years prior to the filing of the Complaint. (Doc. 23, p. 11–12). The Hearing Officer found that the IDEA's exceptions to the statute of limitations were not implicated on these facts and that all claims arising prior to June 8, 2008, are barred. (Doc. 21–2, p. 3).[1] Plaintiff claims that the exceptions to the statute of limitations bar do apply here, tolling the limitations period and entitling Plaintiff I.H. to compensatory education

---

1. The Hearing Officer found that the potential for liability for compensatory education starts in the summer of 2008 and runs through the summer of 2010. The Hearing Officer granted the Plaintiff twenty-four hours of compensatory education for the Defendant School District's failure to even consider whether summer services, in the form of an extended school year, were necessary or appropriate in the summer of 2009, in addition to one half hour of compensatory education for each hour that the Defendant School District was in session between December 4, 2009, and January 5, 2010, the period of time that the Plaintiff was on a half-day program, and one hour of compensatory education for each hour that the Defendant School District was in session between January 6, 2010, and the end of the 2009–2010 school year, the period of time that the Plaintiff had no access to school at all, with little home instruction. (Doc. 21–2, pp. 13–15).

**774**

dating back to March 19, 2007. (Doc. 1, ¶ 84).

■■■ 20 U.S.C. § 1415(f)(3)(C), which controls the limitations period for filing an IDEA action, requires that a plaintiff must request their due process hearing within two years of the date that the parent or agency "knew or should have known" about the alleged violations forming the basis of the Complaint. *See* 20 U.S.C. § 1415(f)(3)(C). Plaintiff's Guardian concedes, and Defendants apparently agree, that the "knew or should have known" date for purposes of requesting a due process hearing was June 8, 2010, when independent evaluations informed Plaintiff's Guardian that Plaintiff was receiving insufficient educational services.

We then move to 20 U.S.C. § 1415(b)(6)(B), which provides a limitations period for the scope of the action, that is, which alleged violations or harms may be included in the complaint. Section 1415(b)(6)(B) provides that the "alleged violation [must have occurred] not more than 2 years before the date the parent . . . knew or should have known about the alleged action that forms the basis of the complaint." 20 U.S.C. § 1415(b)(6)(B). This provision would typically limit Plaintiff's claims to those occurring after June 8, 2008, two years prior to the "knew or should have known date." *Id.* However, this section further provides that "the exceptions to the timeline . . . in subsection (f)(3)(D) shall apply" to this timeline as

well. Accordingly, if Plaintiff is able to meet either of the exceptions to the filing timeline in Section 1415(f)(3)(D), his claims as far back as March of 2007 might be included.

The two exceptions to this general two-year rule are contained in 20 U.S.C. § 1415(f)(3)(D). That section provides that the timeline "shall not apply to a parent if the parent was prevented from requesting the hearing due to . . . (i) specific misrepresentations by the local educational agency that it had resolved the problem forming the basis of the complaint . . . or (ii) the local educational agency's withholding of information from the parent that was required under this part to be provided to the parent." 20 U.S.C. §§ 1415(f)(3)(D)(i)-(ii).[2]

In the Complaint, Plaintiff contends that the Defendant School District's "withholding of essential information about [Plaintiff's] educational needs, through its delay in evaluating [Plaintiff] and the gross deficiency on its evaluations once they were completed," coupled with its "pervasively flawed evaluations [which] . . . misrepresented [Plaintiff's] educational needs" prevented Plaintiff's guardian from understanding the nature of the Plaintiff's learning disabilities and the alleged IDEA violations. The Hearing Officer first stated that Section 1415(f)(3)(D)'s exceptions apply only to the time for filing the complaint, not to the provision limiting the

---

2. Plaintiff contends that both of the exceptions to the statute of limitations bar apply here. Defendants argue that Plaintiff failed to raise the second exception, related to withholding information, before the Hearing Officer, and rules of exhaustion and issue presentation apply in the judicial review of IDEA matters. *see Drinker v. Colonial Sch. Dist.*, 888 F.Supp. 674, 679 (E.D.Pa.1995) ("Pursuant to the IDEA, failure to raise an issue at the administrative level will result in waiver of that issue on appeal. The failure to raise a

claim below will be excused only after a finding that it would have been futile to raise the claim."). However, Plaintiff's initial complaint indicates that Plaintiff sought "an exception to the Two-Year Statute of Limitations based on [Defendant School District's] withholding of information and misrepresentations," (Doc. 21-3, p. 3), and the Hearing Officer addressed both claims in his order. (Doc. 21-3). Accordingly, we review the Hearing Officer's decision for error with respect to both exceptions.

scope of the complaint, but went on to conclude that, regardless, Plaintiff did not satisfy either exception.

 While we disagree with the Hearing Officer's holding that the exceptions enumerated in 20 U.S.C. § 1415(f)(3)(D)(i) and (ii) apply only to the timeline for requesting a hearing and not to the subject matter of that hearing—indeed, Section 1415(b)(6)(B) expressly states that the (f)(3)(D) exceptions are applicable to subject matter as well as time for filing[3]—we do agree with the Hearing Officer's ultimate determination that Plaintiff has not pled facts satisfying either of the exceptions.

With respect to Plaintiff's claim that the Defendants withheld information from her, Pennsylvania federal courts have held that such information refers solely to information "required under [this statute] to be provided to the parent," see 20 U.S.C. § 1415(f)(3)(D), that is, the procedural safeguards and prior written notice to be provided to the parent. See Evan H. v. Unionville–Chadds Ford Sch. Dist., 2008 WL 4791634, *6, 2008 U.S. Dist. LEXIS 91442, *17–18 (E.D.Pa. Nov. 4, 2008); Sch. Dist. of Phila. v. Deborah A., 2009 WL 778321, *2, 2009 U.S. Dist. LEXIS 24505, *5 (E.D.Pa. Mar. 24, 2009); see also Baker v. S. York Area Sch. Dist., 2009 WL 4793954, *5–6, 2009 U.S. Dist. ELXIS 114375, *19–20 (M.D.Pa. Dec. 8, 2009) (noting the "limited" nature of the exceptions and finding them inapplicable). Plaintiff makes no claim in the Complaint that the District withheld this statutorily-required information. Candidly, we believe that this may be why Plaintiff appeared to abandon this claim by addressing it with such brevity in the administrative filings.

Thus we conclude that Plaintiff has failed to satisfy the first exception.

Next, with respect to the alleged misrepresentations, while both statutory and regulatory guidance are lacking, preferring to leave interpretation to the "purview of the hearing officer, see 71 Fed.Reg. 46540, 46706, courts within this Circuit have found that "at the very least, a misrepresentation must be intentional in order to satisfy [this exception]." See Evan H., 2008 WL 4791634, *6, 2008 U.S. Dist. LEXIS 91442, *17–18; Deborah A., 2009 WL 778321, *2, 2009 U.S. Dist. LEXIS 24505, *5. Again, Plaintiff fails to make a claim that the district intentionally, or even negligently, misrepresented any information; indeed, Plaintiff only argues that Defendants' inadequate evaluation resulted in failure to accommodate Plaintiff's learning disabilities as required by the IDEA. We decline to hold, as Plaintiff would have us, that action which constitutes the basis for the IDEA claim itself can, absent more, satisfy the exception to the statute of limitations; doing so would allow the exception to become the rule, and the limitations period would be all but eliminated.

Accordingly, we find that the Plaintiff has not pled sufficient facts to satisfy of either of the two exceptions provided in Section 1415(f)(3)(D). We will thus grant the Defendants' Motion to Dismiss all claims raised by the Plaintiff arising prior to June 8, 2008.

### 3. Plaintiff's ADA Claim

Defendants next contend that Plaintiff's claim under the ADA must be dismissed first because the ADA does not contain a FAPE provision and Plaintiff's claim lies solely in Defendants' alleged denial of a

---

3. Specifically, the statute states: "[T]he exceptions to the timeline described in subsection (f)(3)(D) shall apply to the timeline described in this paragraph." 20 U.S.C. § 1415(b)(6)(B).

FAPE and, second because, even if the ADA contained a FAPE component, Plaintiff failed to raise that claim at the administrative level.

■■■ Relevant case law requires us to dismiss for failure to exhaust administrative remedies all claims arising from the same conduct "seeking relief that is also available under [the IDEA]" which were not raised at the administrative level. *L.R. v. Manheim Twp. Sch. Dist.*, 540 F.Supp.2d 603, 611 (E.D.Pa. Mar.26, 2008) (quoting 20 U.S.C. § 1415(*l*)). The Circuit has explained, "for an ADA or Rehabilitation Act damages claim to survive the exhaustion doctrine, it must be based on a set of circumstances for which IDEA does not provide or contemplate a remedy." *R.R. v. Manheim Twp. Sch. Dist.*, 412 Fed.Appx. 544, 550 (3d Cir.2011) (non-precedential opinion).

■■■ Accordingly, we need not decide Defendants' first question, whether or not the ADA contemplates a FAPE-based claim, because Plaintiff's ADA claim is based upon the same set of circumstances as his IDEA claim, and the relief requested is identical. As *R.R.* and *L.R.* advise, where the ADA claim is based on the same set of circumstances and seeks the same relief as the IDEA claim but was not raised at the administrative level, it fails the exhaustion doctrine. Thus, because Plaintiff failed to raise the ADA claims until this appeal, we find that the ADA claim must be dismissed pursuant to IDEA § 1415(*l*) for failure to exhaust administrative remedies.

#### 4. Plaintiff's Section 1983 Claim

Defendants next assert that Plaintiff's claim under Section 1983 must be dismissed because it is "well established in the Third Circuit that § 1983 actions are not available to remedy deprivations of rights secured by the IDEA." (Doc. 23, p.

19). Defendants cite to *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 803 (3d Cir. 2007), where the Third Circuit rebutted the student's argument that a violation of his rights under the IDEA resulted in a Section 1983 cause of action as well:

> The United States Supreme Court has continued to refer to the Individuals with Disabilities Education Act (IDEA) as an example of a statutory enforcement scheme that precludes a 42 U.S.C. § 1983 remedy. The IDEA includes a judicial remedy for violations of any right relating to the identification, evaluation, or educational placement of a child, or the provision of a free appropriate public education to such child. Given this comprehensive scheme, Congress did not intent 42 U.S.C. § 1983 to be available to remedy violations of the IDEA.

*Id.* at 803.

■■■ In attempt to refute this argument, Plaintiff cites to *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), for its holding that governmental entities are persons who may be sued under 42 U.S.C. § 1983. *Id.* at 690–92, 98 S.Ct. 2018. This blanket statement, however, is entirely unresponsive to the issue raised by the Defendants. The Defendant School District has not contended that it is generally immune from Section 1983 liability, thus making Plaintiff's *Monell* response altogether irrelevant. Instead, Defendants argue quite correctly that Supreme Court has held that the cause of action and attendant remedies provided under the IDEA are the exclusive remedy for violations thereof, and that Congress did not intend Section 1983 to serve as a supplemental remedy for violations of the IDEA. Accordingly, because the Supreme Court has explicitly held that Section 1983 cannot be used to

remedy violations of IDEA-created rights, we dismiss Plaintiff's Section 1983 claim.

### 5. Plaintiffs' Request for Expert Fees Under Section 504

The Defendants next take issue with Plaintiff's request for expert fees pursuant to Section 504. The Defendants rely on the Supreme Court's decision in *Arlington Cent. Sch. Dist. v. Murphy*, 548 U.S. 291, 297–98, 126 S.Ct. 2455, 165 L.Ed.2d 526 (2006) for its holding that expert fees are not available to a prevailing party under the IDEA, *see id.* at 298, 126 S.Ct. 2455, analogizing the IDEA analysis to Section 504. The Third Circuit recently reiterated the *Arlington* holding in *A.S. v. Colts Neck Bd. of Educ.*, 190 Fed.Appx. 140, 142 (3d Cir.2006) (stating that "[t]he Supreme Court has recently held that the IDEA does not permit prevailing parties to recover expert fees"). Defendants analogize a claim for expert fees under IDEA, a spending clause statute, to Plaintiff's claims for expert fees pursuant to Section 504, likewise a spending clause statute, and contend that for all of the reasons stated in *Arlington* as it relates to the IDEA, expert fees should not be available to Plaintiff under Section 504. We find this argument to be without merit.

In *Arlington*, part of the Court's holding was premised on the fact that the IDEA does not unambiguously set forth predictable parameters for expert fees, a requirement of spending clause litigation, and accordingly the Court found that Congress did not intend for expert fees to be available to prevailing parties under the IDEA. *See Arlington*, 548 U.S. at 297–98, 126 S.Ct. 2455. That is simply not the case

with Section 504. In the section of the Rehabilitation Act providing remedies, Congress stated: "[The] remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964 ... shall be available to any person aggrieved ... under section 504 of this Act." 29 U.S.C. § 794a(b). And Section 2000e–5(k) of the Civil Rights Act, which the Rehabilitation Act incorporates for purposes of rights, remedies, and procedures, expressly states that "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee (including expert fees) as part of the costs." 42 U.S.C. § 2000e–5(k).

We believe that Section 504 thus contemplates an award of expert fees to the prevailing party in its assumption of the rights and remedies of the Civil Rights Act. *See, e.g., L.T. v. Mansfield Twp. Sch. Dist.*, 2009 WL 2488181, 2009 U.S. Dist. LEXIS 70133 (D.N.J. Aug. 11, 2009). Accordingly, we will deny the Defendant's Motion to Dismiss Plaintiff's claim for expert fees pursuant to Section 504.[4]

### 6. Qualified Immunity

Lastly, we turn to Defendant Harner's qualified immunity argument. Plaintiff's Complaint does not specify whether Defendant Harner is sued in his official capacity, his individual capacity, or both. We assume for purposes of this analysis that Defendant Harner is sued in his individual capacity, as Plaintiff does not raise any *Monell* facts or argument in his Complaint. Defendant Harner asserts that the Complaint is entirely devoid of any references to him, aside from naming him as a party and providing his professional address in Paragraph 11. (Doc. 1, ¶ 11). According-

---

4. We note that Plaintiff also contends that expert fees are permitted to be awarded on the basis of his ADA claim, where "litigation expenses," including expert fees, are expressly recoverable. *See* 42 U.S.C. § 12205 (2010).

However, having disposed of Plaintiff's claim under the ADA on administrative exhaustion grounds, Plaintiff's sole basis for expert fee reimbursement remains Section 504.

ly, Defendant Harner contends, he must be dismissed because he is protected by the doctrine of qualified immunity. Plaintiff's response is so brief as to allow us to quote it in its entirety here: "A public official who is sued in his individual capacity for violation of clearly established federal rights under color of law is not entitled to qualified immunity. Since Defendant Harner is sued for violating [Plaintiff's] clearly established right to a free, appropriate public education in the least restrictive environment, he has no entitlement to qualified immunity." (Doc. 24, p. 22). Thus, once more, Plaintiff fails to respond to the Defendant's far more thorough argument.

■ The doctrine of qualified immunity shields officials acting and sued in their individual capacities. *See Brandon v. Holt,* 469 U.S. 464, 471–73, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). A state or municipal actor "sued in his individual capacity enjoys qualified immunity if his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Ridgewood Bd. of Educ. v. N.E. for M.E.,* 172 F.3d 238, 254 (3d Cir.1999) (superseded on other grounds in *P.P. v. West Chester Area Sch. Dist.,* 585 F.3d 727, 730 (3d Cir.2009)). The Third Circuit has succinctly set forth the standard for analyzing a qualified immunity claim:

> Determining whether a state actor is entitled to the affirmative defense of qualified immunity generally involves two inquiries: (1) do the facts alleged show that a state actor violated a constitutional right, and (2) was the constitutional right clearly established so that a reasonable person would know that the conduct was unlawful? A right is clearly established if there is "sufficient precedent at the time of the action ... to put [the] defendant on notice that his or her

conduct is constitutionally prohibited. Courts are accorded 'discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'"

*Wilson v. Zielke,* 382 Fed.Appx. 151, 152 (3d Cir.2010) (quoting *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009); *McKee v. Hart,* 436 F.3d 165, 171 (3d Cir.2006)) (internal citations omitted).

■ Plaintiff has failed to meet this standard. Indeed, Plaintiff has failed to put forth any facts with respect to Defendant Harner whatsoever. As Defendants aptly observe, Plaintiff's Complaint refers to Defendant Harner only once, in Paragraph 11, providing the Court with his business address. As stated previously, while a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain *detailed* factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); that is, *some* factual allegation with respect to Defendant Harner is required in order to find that Plaintiff is entitled to proceed to discovery. Plaintiff has failed to plead with any level of specificity that Defendant Harner violated a constitutional right, and accordingly, the doctrine of qualified immunity directs us to dismiss him from this lawsuit.

## V. CONCLUSION

To reiterate, and for all of the reasons stated herein, this Court finds Plaintiff has stated a claim for which relief can be granted under the IDEA, but has failed to state a claim for which relief can be granted under Section 1983 and the ADA. With respect to Plaintiff's IDEA claims, we find that, as a matter of law, unenrollment from

the school district of residence does not eliminate the public school district's obligation to provide the student with an IEP, but it does eliminate the district's duty to provide an FAPE; accordingly, Plaintiff's IDEA claim, to the extent that it requests prospective relief, is limited in remedy to an IEP. We further find that Plaintiff has failed to plead sufficient factual matter to satisfy either exception to the IDEA limitations period, and thus, we agree with the Hearing Officer that Plaintiff's claims for compensatory education are limited to those arising after June 8, 2008. Finally, we find that Plaintiff has failed to establish any claim for liability against Defendant Harner, with an absolute dearth of factual allegations against him, and accordingly, hold that Defendant Harner protected by qualified immunity.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendants' Motion to Dismiss is **GRANTED** in part and **DENIED** in part to the following extent:

 a. The Motion is **GRANTED** to the extent that it requests Defendant Harner be dismissed. The Clerk is **DIRECTED** to terminate Defendant Harner as a party to this action.

 b. The Motion is **GRANTED** to the extent that is relates to Plaintiff's claims in Count C and Count D, for relief under the ADA and Section 1983, respectively. Plaintiff's claims in Count C and Count D are **DISMISSED** with prejudice.

 c. The Motion is **GRANTED** to the extent that it requests that Plaintiff's claims under the IDEA be limited by the statute of limitations to claims arising after June 8, 2008.

 d. The Motion is **GRANTED** to the extent that it relates to Plaintiff's prospective claim for a free and appropriate public education ("FAPE") from Defendants. The Motion is **DENIED** to the extent that it relates to Plaintiff's prospective claim for an individualized education program ("IEP") evaluation, and Plaintiff shall be permitted to pursue such relief.

 e. The Motion is **DENIED** in all other respects. All other claims not specifically dismissed in this opinion remain viable.